BALLSTON SPA BANK VS. THE MARINE BANK and others.

It is competent for the cashier of a bank organized under the general banking law, (R. S. ch. 7,) as agent for its board of directors, to execute a promissory note for money borrowed to use in its business, and the bank will be bound thereby.

Where money had been borrowed upon a note executed for a bank by its cashier, and its board of directors received and appropriated the proceeds of the note to the use of the bank, or acquiesced in such appropriation, and suffered the note to be several times renewed by notes executed in a similar manner, and made several payments of interest thereon. *Held,* that the bank had ratified the act of its cashier in giving the note, and such ratification was equivalent to a previous express authority.

If the principal wishes to repudiate the unauthorized act of his agent, he should do so when it is brought to his knowledge, and he cannot avail himself of an un-

authorized act and derive a benefit therefrom, and then repudiate it to the injury of the other party.

Where the Marine Bank *of Milwaukee* had been sued on two notes executed in the name of "The Marine Bank," and objection was made at the trial to the reception of the notes in evidence, and the court allowed the plaintiff without terms to amend the complaint by alleging that the Marine Bank of Milwaukee make the notes in suit by the name of "The Marine Bank," by which name it was well known and transacted business. *Held*, that the variance was technical merely, and the amendment properly allowed; and that "surprise at a *decision* of the court" is no ground for refusing an amendment or postponing the trial.

An affidavit for continuance must show that the party applying for it has a valid cause of action or defense.

A continuance will not be granted solely, to allow a party to obtain evidence on a point rendered immaterial by his own answer.

The defendant will not at the trial, and without cause shown, be allowed to amend his answer so as to withdraw an admission deliberately made.

The circulation of foreign currency is not prohibited in this state, and we have no statute indicating a policy adverse to it, and incorporated banks of this state may receive it and pay it out, and may borrow it, and their notes given for it are valid.

The act of New York (Laws 1850, ch. 172,) that "no corporation shall hereafter interpose the defence of usury," repealed the usury law of that state as to corporations.

Where A owed B a debt and transferred to him certain collateral security as consideration for an extension of the time of payment and as security, and took a receipt which stated the assignment of the collateral securities and that they would be given up when the debt was paid, but was silent as to the agreement for an extension of the time of payment. *Held*, that extrinsic or parol evidence was admissible to prove the agreement extending the time of payment.

Where only part of an entire agreement is reduced to writing, the residue may be proved by extrinsic evidence.

APPEAL from the County Court for *Milwaukee* County.

This action was brought against the *Marine Bank of Milwaukee* as maker, and *Hoover & Medbury* as indorsers of two notes, one of $5,000 and the other of $4,000, to recover the amount thereof with interest.

The notes were made on the 16th day of October and the 30th day of November, 1858, respectively, and signed by the cashier of the *Marine Bank*, and made payable to *Hoover & Medbury* who endorsed the same to the plaintiff. It was alleged that the plaintiff was a banking corporation, organized

under and by virtue of the laws of the state of New York, and doing business at Ballston Spa, in that state, and that the defendant was a banking corporation created and existing under the general banking law of Wisconsin, and that at the several times mentioned, when said notes were given, J. H. Skidman was the duly appointed cashier of the defendant *The Marine Bank*, and that he was duly authorized to make said notes. The complaint contained the usual allegations of non-payment, protest and notice thereof to the defendants *Hoover & Medbury*, and was verified.

The answer of the defendant, *The Marine Bank*, admitted the making, delivery, endorsement, dishonor and protest of the said notes, but denied that said J. H. Skidmore was ever duly or legally authorized to make said notes or either of them, and averred that they were made and delivered without any authority therefor from it, and that they were not binding on it. And for a second defence, it was alleged that the only consideration for the notes was a loan of bank bills issued by the plaintiff to circulate as money, and not otherwise, made to the defendant *Hoover*, who was then president of the *Marine Bank*, but without any authority from it to make such loan, and that such loan was not necessary or required by it in the due and usual transaction of its business as a banking corporation, and it was not authorized by its charter to make such loan; that the plaintiff had notice of these facts, and that the money having been borrowed by *Hoover* the notes were made payable to *Hoover & Medbury* without any consideration moving from them, and in order to give the plaintiff additional security by their endorsement of them, and that they endorsed not at the instance or request of the *Marine Bank*, but at the instance of said *Hoover* only, and that he procured *Medbury* to indorse the notes without any authority from the *Marine Bank*. And for a third defence, the *Marine Bank* charged in substance, that said notes were usurious and void, for that *Hoover*, then the president of the defendant, on the first day of July, 1857, without

the authority of the defendant, borrowed of the plaintiff bank bills issued by the plaintiff, amounting to $5,000, and in payment therefor gave to the plaintiff the promissory note of the defendant of that date for that sum, payable three months after date at the Nassau Bank in the city of New York; that said bank bills were delivered at Ballston Spa, in the state of New York, and that the said note was endorsed by *Hoover & Medbery*, as accommodation endorsers thereof, which was known to the plaintiff.

That said *Hoover* paid as interest on said note for the time it had to run as aforesaid, the sum of $90.42 legal interest thereon according to the law of the state of New York being 7 per cent., and that the plaintiff then was and ever since then had been limited by the laws of the state of New York to that rate of interest in its business transactions, and prohibited from receiving or contracting to receive any greater rate of interest ; and by the laws of the state of New York, all contracts, agreements or securities, whereby there is taken or received, or agreed to be taken or received, for the loan of money or other goods, chattels or choses in action, a rate of interest greater than seven per cent per annum, are null and void.

The defendant further alleged that the said last mentioned note not being paid at maturity, the same was renewed for the period of three months and said note was cancelled and returned and in place thereof a new note for the sum of $5,000, was given in like manner as the original one by said *Hoover*, payable to *Hoover & Medbury* and endorsed by them, dated Oct. 4, 1857, payable three months from date, at the Nassau bank, in the city of New York ; that as consideration for such renewal, and as interest on the principal of said note during the time of such extension, there was paid to and received by said plaintiff at the time of such renewal the sum of one hundred dollars ; the legal interest for that time at the rate aforesaid, being the sum of ninety dollars and forty-two cents. The defendant set forth in its answer six successive renewals of said

note made in all respects in the same manner as that above set forth, and in each of which more than seven per cent interest was charged and received by the plaintiff. The defendant alleged in its answer the circumstances in relation to the making and endorsing of another note for $5,000, by the same parties which were substantially the same as those under which the first mentioned note was made, and that it was renewed several times in such manner, and on such renewals certain sums were charged and received by the plaintiff over and above legal interest; that on one of the notes given in renewal of the last named note the sum of $1,000, was paid, and the note was again renewed for $4,000, and this note was once renewed and that the note so given is the one set forth in the second cause of action in the complaint. The defendant alleged that all the notes so given in satisfaction and renewal and extension as stated in said answer, were endorsed by *Hoover & Medbury* as accommodation endorsers only, which was known by the plaintiff when they were made, and that they were executed by officers of the defendant but without any authority to do so, and that the several payments of interest mentioned in the answer and the payment of $1,000, as aforesaid on one of said notes, were made out of the property and funds of the defendant, by officers of the defendant, but who in making such payments acted wholly without authority from the defendant, and beyond the scope of their authority as agents and officers of the defendant; that all the payments of principal and interest aforesaid were made at Ballston Spa, in the state of New York, in sight drafts payable in New Nork and were so made payable, and said notes were made payable in New York, to enable the plaintiff to receive and take greater sums than the amount of such payments, by reason of the difference of exchange between Ballston Spa and New York.

The answer of the defendant *Medbury* was in substance the same as that of the *Marine Bank*, and in addition thereto it was alleged that on or about the day of the maturity of the

## JUNE TERM, 1862. 125

Ballston Spa Bank vs. Marine Bank et al.

$4,000 note mentioned in the complaint, not including the days of grace thereon, the plaintiff without the knowledge or consent of *Hoover* and the defendant *Medbury*, or either of them, in consideration of the payment by the *Marine Bank* defendant, of interest on said last named note at the rate of ten per cent per annum once in every six months in advance, and which was paid to and received by the plaintiff up to and including the first day of September, 1859, being a sum much greater than legal interest thereon, and also in consideration of the assignment and delivery of a certain promissory note with a mortgage on real estate of said *Hoover* and wife, as security therefor, for $6,000, and also in consideration of the assignment and delivery by the said *Marine Bank* defendant, to said plaintiff of a certain promissory note of one G. H. Hazleton, for $3,000 and endorsed by C. H. Abbott and G. H. Hazleton & Co.; the plaintiff by its president duly authorized thereto, did promise and agree to and with the *Marine Bank* defendant, to extend and did extend the time and payment of the said last named note for one year from the first day of March 1859; and that since the maturity of said note and mortgage of said *Hoover* the said plaintiff had commenced suit thereon in its own name to collect the same and had realized therefrom the sum of about $3,000. The issues so joined came on for trial before the court and jury.

The defendant, the *Marine Bank* of Milwaukee, by its counsel, objected to any evidence being received under the complaint, for the reason that it did not state facts sufficient to constitute a cause of action, in that it set forth that the notes sued on were executed only by the defendant's cashier, and not by its president, or vice president, and cashier. The court overruled the objection, to which ruling the bank, defendant, excepted. The defendants also objected to the introduction in evidence of the notes mentioned in the complaint. 1st. Because there was no evidence that Skidmore, by whom they purported to be executed, was at that date cashier of the bank

defendant. 2. There was no evidence of the authority of the cashier to make the notes. 3. Because the allegation in the complaint that " *The Marine Bank*, of Milwaukee, made the notes sued on, is not sustained by the notes offered in evidence. The court overruled the first and second objections and sustained the third, to which ruling as to the first and second objections the counsel for the defendants excepted. The counsel for the plaintiff asked for leave to amend the complaint to which the defendants objected; the court gave the plaintiff leave to amend, to which the counsel for the defendants excepted. The defendant then by leave of the court, inserted an allegation in its complaint, that the defendant, *The Marine Bank*, of Milwaukee, made the notes therein set forth by the name of " The Marine Bank," by which name it was well known and transacted its business. The defendants then applied for a continuance of the cause on an affidavit of John S. Harris, to the effect that the testimony of J. H. Skidmore was material and necessary to the defendant, the *Marine Bank*, of Milwaukee, under the decision of the court upon the objections to the introduction in evidence of the notes mentioned in the complaint, and the decision of the court allowing the complaint to be amended; that the defendant, the *Marine Bank*, was surprised by such ruling and decision and that as he was advised by defendants counsel, and verily believed, it was then necessary to the defence of the suit, that said Skidmore should be in attendance on the trial to prove that he never had any authority, express or implied, to execute the notes in question, that Skidmore then was at Sedalia in the state of Missouri and that the same facts could not be proved by any other person than him and one J. A. Hoover, who was then in California; that deponent was advised by counsel prior to the trial, and went to trial on such advice, that said notes could not be introduced in evidence under the pleadings as they were at the commencement of the trial, and that the deponent made such affidavit on behalf of the defendant the *Marine*

*Bank,* being an officer thereof. The court denied the application for a continuance and the defendants excepted to the decision. The defendant, the *Marine Bank* of Milwaukee, then applied for leave to amend its answer by striking out the whole of the first defense set forth therein, and by inserting in the place thereof, a general denial of each and every allegation of the amended complaint. The court refused to allow such amendment, and to this refusal the bank defendant excepted. The plaintiff then read in evidence the notes mentioned in the complaint, and read evidence showing demand and protest of the said notes, and notice thereof to the defendants, *Hoover & Medbury,* and rested its case. The defendants moved for a non-suit which motion was over-ruled by the court and the defendants excepted. The *Marine Bank* defendant read in evidence its articles of association. Sec. 1., Art. 3, was as follows: "All the powers, rights and privileges of each and all the associates, and those who may become such by virtue of these articles, are hereby delegated to and vested in, and shall be exercised only by a board of directors, who shall appoint such officers and agents as may be necessary for the transaction of the business of the association." Sec. 1, Art 4, provided: "A majority of the directors are hereby authorized and empowered to appoint one of their number president, and one of their number vice president, and to appoint a cashier ; and to remove such president, vice president, cashier, and every officer, agent, and servant and appoint others in their stead."

*John W. Thompson,* the president of the plaintiff, testified as a witness on behalf of the *Marine Bank,* that its answer gave the history of the two notes in suit correctly, except as to the amounts of discount, but that the amounts of money paid were correctly stated, that the . notes were discounted at seven per cent., and the balance was credited to the defendant, the *Marine Bank* on the plaintiff's books; that the plaintiff was in the habit of sending a sum of money at the different times of the renewals of the notes, stating in their

letters that it was for interest and exchange, and that the plaintiff credited it on its books for the amounts, and charged the bank, defendant with the discounts, and that the amount over and above discount and exchange with which the bank, defendant, was credited on the plaintiff's books was $540; that no part of this was indorsed on the notes in suit, and no credit therefor was allowed in the complaint in this action, which was verified by the witness, and that the defendant, the *Marine Bank*, was not owing the plaintiff on any other account than the notes in suit. The counsel for the *Marine Bank*, defendant, read in evidence the statute of New York on the subject of interest. The counsel for the defendants, *Hoover & Medbury* then read in evidence a writing signed by the president of the plaintiff, dated at Ballston Spa, N. Y., March 11, 1859, as follows: " *The Marine Bank* of Milwaukee has assigned to the *Ballston Spa Bank* the note of *J. A. Hoover*, and the mortgage of said *Hoover* and wife to said *Marine Bank* dated March 1, 1859, payable one year after date, for six thousand dollars, with interest at ten per cent., and has also delivered to said *Ballston Spa Bank* the promissory note of G. H. Hazelton, dated March 1, 1859, for three thousand dollars, payable one year after date, endorsed by C. H. Abbott and G. H. Hazelton & Co., as collateral security to the payment of two notes, due from said *Marine Bank* to the *Ballston Spa Bank*, one of five thousand dollars, due January 19, 1859, and the other of four thousand dollars, due March 3, 1859. When said two last named notes are paid, all the above securities are to be given up on demand." John S. Harris testified on behalf of the defendants, *Medbury & Hoover*, that the consideration for the assignment of the securities mentioned in such writing was that the plaintiff was to extend the time of payment of the notes in suit until such securities became due ; that there was no other consideration for the assignment, no money paid, and that the mortgage was sent from the *Marine Bank* by Mr. G. H. Hazelton one of its directors and an indorser of the note

therein mentioned; and that the interest on the exten-
sion was to be paid every six months in advance, and
the first six months interest was paid in advance. Ha-
zelton went to Ballston Spa under witness's instructions
as agent of the *Marine Bank* defendant, and brought the
writing, and this bank sent the draft to pay the first six
months interest. His instructions were to take up and pay the
notes in suit, with the securities; failing in that, he was to ob-
tain an extension; he had no other instructions or authority.
A considerable evidence was given by the defendants *Hoover*
& *Medbury* in support of this branch of the case, and also by
the plaintiff to refute the same. It appeared that the plaintiff
had foreclosed the note and mortgage against *Hoover*, assigned
to it as before stated, but at the expense of the bank, defend-
ant. After the testimony was closed, the counsel for the *Ma-
rine Bank* requested the judge to charge the jury as follows:
"That banks in this state have not, under the general banking
law, any power or authority to borrow the bank bills of banks
located in foreign states; that such power is not within the
direct or incidental powers granted to banking corporations in
this state, and that if the jury find that the consideration for
the notes sued upon was such loan of such bank bills, the
plaintiff is not entitled to recover." "That to entitle the plain-
tiff to recover, the plaintiff must show that the notes in ques-
tion were executed by the person who did execute them, by
the authority of this defendant, and that the cashier of this
defendant had no authority, by virtue simply, of his office as
cashier, to execute the notes in question so as thereby to bind
this defendant." "That even if such cashier had *prima facie*,
such authority by virtue of his office merely, so as then to place
the burden of proof upon this defendant, to show that he had
not, then if the jury find that the corporation of this defendant,
in their original articles of association, vested all the powers of
the corporation, direct and incidental, in the board of directors,
the presumption of authority in the cashier to execute the notes

is rebutted, and the burden of proof is then upon the plaintiff, to show affirmatively that the cashier was authorized by the directors to execute the notes, and unless the plaintiff has shown that he was so authorized by the directors, the plaintiff cannot recover." "That if the jury find that by the articles of association of the defendant, all the powers of the corporation were vested in the board of directors, that then the cashier of this defendant had no authority to execute the notes in question, without express authority from the board of directors to do so." "That the same rule applies as to the ratification of contracts, that applies as to executing them originally, as far as the question of authority is concerned; in other words, the authority of an officer to ratify a contract must be derived in the same way that the authority to execute it originally, must be derived." "That the president of this defendant had no authority, by virtue of his office, to borrow the currency of the plaintiff, to be used in this defendant's business of banking, and to give the notes of this defendant therefor, or to direct this defendant's cashier to give such notes." "That the statute of the state of New York, that corporations shall not interpose the defense of usury, is not a repeal of the usury law of that state, as to corporations, and at most it is only a prohibition upon the courts of New York to entertain such defense, and upon corporations from setting up such defense in the courts of that state, and therefore does not affect corporations chartered by and sued in the courts of this state." The court refused to give such instructions as requested.

The court instructed the jury as follows: "It is claimed by the two endorsers, defendants, that on the 11th of March, 1859, at the time certain collaterals were delivered to the plaintiff, that it was agreed between the plaintiff and the *Marine Bank*, defendant, that in consideration thereof the plaintiff would extend the time of payment of the debt in suit, till March 1st, 1860. The receipt given at the time for said collaterals, has been read in evidence, and shows no such agreement,

and there is no evidence, which the jury can consider, of such an agreement made at that time. Such agreement, if made by Hazelton and Thompson, was made at the time this receipt was given, and was oral, and is for that reason void; " to which charge the counsel for the defendants *Medbury & Hoover* excepted. The plaintiff obtained a verdict against all the defendants for the amount of the notes upon which judgment was entered, from which the defendants appealed.

*Carpenter* & *Gridley*, for the appellants, *Hoover* & *Medbury*, argued that the instructions of the court to the jury were erroneous; that additional security was the consideration for the oral agreement to extend the time of payment of the notes in suit, and parol proof of such agreement was admissible in evidence, as it would neither contradict or vary the written agreement. *Potter vs. Hopkins*, 25 Wend., 417 ; *Ide vs. Ladler*, 18 Barb., 32; *Filkins vs. Whyland*, 24 Barb., 379 ; *Wentworth vs. Buhler*, 3 E. D. Smith, 305 ; *Woodward vs. Eastman*, 10 N. H., 309; *Fiske vs. McGregory*, 34 N. H., 414; *Marshall vs Baker*; 1 App., (Maine,) 402 ; *Davenport vs. Mason*, 15 Mass., 85 ; *Gerrish vs. Washburn*, 9 Pick., 338 ; *Rohan vs. Hanson*, 11 Cush., 44; *Miller vs. Fichthorn*, 31 Penn., 252.

*Butler, Buttrick & Cottrill*, for the appellant, *The Marine Bank*, of Milwaukee. 1. The notes sued on were executed by the cashier of this appellant alone and no action can be maintained against it on them. R. S., chapt. 7, sec. 71 ; *Reedsburg Bank vs. Hastings*, 12 Wis.,47; Brooms Legal Maxims, 505, 506 ; *Governor &c. vs. Richardson*, 3 Burr., 1344; *North River Ins. Co. vs. Lawrence* 3 Wend., 482 ; *Price vs. Deitrich*, 12 Wis., 626 ; *Ridgeway vs. Farmers Bank*, 12 Serg. & R., 256 ; 8 Serg. & R., 521 ; 28 Pa. St., 379; 2 Johns., 109; *Williams vs. Chester & Holywod, R. R.*, 5 Eng. Law & Eq., 497; 12 Eng. L & E., 385; 4 Car & P., 121 ; 12 Mass., 185 ; 1 Denio, 520 ; 7 Wend., 31; 7 Cow., 462 ; 2 Seld., 92 ; 8 Wheat., 338; 19 Vt., 230 ; 21 Vt., 353. 2. The court erred in allowing the amendment to the complaint at the trial. It changed the entire complaint and set up new and indepen-

dent causes of action. *Fague vs. Davidson*, 2 Duer., 153, 481 ; 4 Duer., 362 ; *Fay vs. Grimstead*, 10 Barb., 321 ; 10 How. Pr., 315, 193 ; 1 Bosw., 469. When the notes were offered it was not a case of variance but of failure of proof. 3. The court should have allowed a continuance to procure the testimony of the only two witnesses who could testify in regard to the execution of the notes. 4. The court should have allowed the defendant to put in an answer to the amended complaint as offered by the appellant. 5. The court should not have permitted the notes to be read in evidence without proof that Skidmore had authority to execute them, the general rule being that the notes of a corporation made by one of its officers or agents, are not binding unless made by express authority. Angell & Ames on corp. 298 ; 14 Mass., 180 ; 17 Mass., 94, 505 ; 1 Seld., 320 ; 4 Paige 127 ; 6 Paige 337 ; 2 Barr., 318. 6. That, borrowing by banks of this state of the bills of foreign banks, is not within the direct or incidental powers granted to our banks. *Curtis vs. Leavitt*, 15 N. Y., 1 ; *Rockwell vs. Elkhorn Bank*, 13 Wis.,653. It is in violation of the policy of the laws of this state R. S. 46 ; Laws of 1858, ch. 116 ; ch. 98 Laws 1861 p. 242. 7. Conceding, that *prima facie* the authority of the cashier of the appellant to give the notes was made out, yet this was rebutted by the production of the articles of association and it then became necessary for the plaintiffs to show some authority from the directors. *Hugh vs. Thompson*, 1 Seld., 320 ; *McCullough vs. Moss*, 5 Denio 567. 8. The notes were New York contracts and were usurious unless protected by the statute of that state, relative to the defence of usury by corporations. 9. The statute of New York which provides that " corporations shall not interpose the defence of usury in any action " is not a repeal of the usury law of that state as to corporations. At most, it is a prohibition upon the courts of that state to entertain such defence and does not affect corporations created by our laws and sued in the courts of this state. *Newman vs. Kershaw*, 10 Wis., 333 ; *Hoyt vs. Thompson*, 1 Seld.,

340. This act is in direct conflict with our local policy, and if enforced, introduces a rule that seems to have been purposely omitted by the legislature, a rule local in itself, enacted by a foreign legislature and intended to restrict their own courts only.

*D. G. Hooker*, for the respondent. As to the execution of the notes by the cashier of the bank defendant cited, *Rockwell vs. Elkhorn Bank* 13 Wis., 653; Ang. & Ames on corp. 300 ; *New Eng. Marine Ins. Co. vs. De Wolf*, 8 Pick., 56 ; *Bank of U. S. vs. Dandridge*, 12 Wheat., 64. The defendant had the power to borrow the money and give the notes sued on. *Curtis vs. Leavit*, 15 N. Y., 9 ; *Rockwell vs. Elkhorn Bank, supra.* If the notes are New York contracts the plea of usury cannot be interposed, R. S. N. Y., vol. 3, page 75 ; 15 N. Y., 85, 154 ; *Southern Life Ins. & Trust Co. vs. Packer*, 17 N. Y., 51. The endorsers, *Hoover & Medbury* were not discharged by reason of any agreement for the extension of the time of payment made between the plaintiff and *The Marine Bank*, because such agreement to operate as a discharge, must be founded on a sufficient consideration, and the agreement must be such as to suspend the creditor's right of action. The written memorandum signed by the president of the plaintiff does not show any such agreement and parol evidence was inadmissable to contradict, add to or vary it.

*By the Court*, DIXON, C. J. It was competent for the cashier, as agent for the board of directors, to execute the promissory notes in question, and bind the bank by such execution. *Rockwsll v. Elkhorn Bank*, 13 Wis., 653. Whether then the cashier has *prima facie* authority by virtue of his office, or whether absolute, or whether still, the party seeking to charge the bank through his act, must give evidence that he was expressly authorized by the board of directors, we need not now inquire. A subsequent ratification is equivalent to a previous expresss authority. Such ratification may be by mere silence

and acquiescence, after knowledge of the transaction comes to the board. *Bridge Company v. Phoenix Bank*, 5 Cowen, 156; *Hoyt v. Thompson*, 19 New York, 207. Supposing an express authority necessary, and that it was not given, the fact of ratification is so fully admitted in the answer of the defendant bank, as to preclude all possibility of defense upon that ground. The board of directors received and appropriated the proceeds of the notes to the use of the bank; at least, they acquiesced, in such appropriation. They suffered the note to be several times renewed, and numerous payments of interest to be made. If it had been their wish to repudiate, because the cashier had exceeded his authority, they should have done so at the outset by restoring the consideration for which the notes were given, or, if that could not be done, by affording the plaintiff the earliest opportunity of redress. No man can avail himself of an unauthorized act to his advantage, and then reject it to the injury of the other party. The benefit arising from ratification has its corresponding burden, and the parties thenceforth become reciprocally bound.

The articles of association, though offered for that purpose, did not prove that the cashier acted without authority. They are entirely consistent with the supposition that he was expressly authorized. Section one of article three declares, that the board of directors "shall appoint such officers and agents as may be necessary for the transaction of the business of the association." Under this provision, with the facts before us, the presumption, when necessary to be resorted to, would seem to be rather that there was, than that there was not, a previous express authority.

The objection to the notes on the ground of variance was of the most technical nature; and the court was right in permitting an instantaneous amendment. There was no proof, or plausible pretence even, that the defendants were actually misled to their prejudice; and surprise at the decision of the court in such case, is no ground for refusing the amendment

or postponing the hearing. *Gillett vs. Robbins*, 12, Wis., 239; *Fisk vs. Tank*, id., 301; *Bonner vs. Insurance Co.*, 13 Wis., 683.

Beside not showing due diligence, the affidavit for a continuance was defective in not showing a valid defense, Rule 22, Old Rules. Furthermore, the facts to which the absent witness was to be called, namely, that he, as cashier, had no express or implied authority to execute the notes, were, as we have already seen, inconsistent with the answer.

The application of the defendant, bank, for leave to amend its answer, was properly denied. It was not in furtherance of justice. Not founded in mistake, and substantially changing the defense, it would have been a gross perversion of the discretionary powers of the court to have granted it. R. S., ch. 125, sec. 37. It would have been allowing the defendant at the trial, and without cause, to withdraw admissions deliberately made, and thus to compel the plaintiff to ask for delay.

The circulation of foreign currency is not prohibited in this state, and we have no statute indicating a policy adverse to it. Individuals may receive and disburse it as much as they please, and no reason is perceived why the banks may not. If they may receive and pay it out, they certainly may borrow and give their notes for it.

The act of New York, laws of 1850, chap. 172, that "no corporation shall hereafter interpose the defense of usury," repeals the usury law of that state as to corporations. Such is the opinion of the court of that state, and we do not differ with them. *Per Comstock, Brown, Paige* and *Selden*, J. J., in *Curtis v. Leavitt*, 15 New York, 85, 151, 228 and 255; and *Insurance Co. v. Packer*, 17 New York, 51. It is immaterial, therefore, to consider whether the notes are New York contracts or Wisconsin contracts.

It seems to us upon general principles applicable alike to all cases, that extrinsic or parol evidence is admissible to show the agreement extending the time of payment, notwithstanding it was not inserted in the receipt given for the collaterals.

It is a clear mistake to suppose that the receipt is the contract upon which the collaterals were deposited. It does not purport to be, but was evidently given to show the nature of the transfer, that it was security, and not absolute. The contract upon which the transfer was made, or rather the consideration for it, is entirely omitted. It might, it is true, if the parties had chosen, have been inserted; but there is no rule of law compelling them to do so. When only part of an entire agreement is reduced to writing, the residue may be proved by extrinsic evidence. *Jeffery v. Walton*, 1 Starkie, 267 (2 E. C. L., 385); *Coates v. Sangeton*, 5 Md., 121; *Knight v. Knotts*, 8 Rich., Law, 35; 2 Parsons on Con., 66. If we look upon the receipt we cannot say what was the consideration for the deposit. It may have been one thing, or it may have been another; hence, to prove that the securities were given in consideration of further time upon the principal debt, does not vary or contradict the terms of the receipt. It is no alteration of, or addition to a written contract.

The instructions to the jury upon this latter point were erroneous, and for that reason the judgment below must be reversed as to the defendants *Hoover* and *Medbury*, and a new trial awarded. As to the defendant, *The Marine Bank of Milwaukee*, the judgment is affirmed.