ROCKWELL VS. ELKHORN BANK, impleaded with SIBLEY and another.

| 13 | 653 |
|----|-----|
| 74 | 390 |
| 13 | 653 |
| 79 | 36 |
| 13 | 653 |
| 96 | 6 |
| 13 | 653 |
| 103 | 48 |
| 103 | 51 |
| 13 | 653 |
| 106 | 114 |

Corporations, authorized generally to engage in a particular business, have, as an incident, the power to contract debts in the legitimate transaction of such business, and to give negotiable notes or bills in payment or security therefor, unless restrained by their charters or by statute from doing so.

Banking associations under chap. 71, R. S. 1858, have power to contract debts in the regular course of their business, and to give negotiable notes or bills in payment or security therefor, if they are executed in the common form of such instruments, and not under such circumstances and in such form as to make it evident that they were designed as an evasion of the 10th section of the act, in which case they would of course be void.

The legislature has power to prescribe the manner in which corporations shall contract, and when it has done so, the mode prescribed must be strictly pursued or the contract will be invalid.

But the requirement in sec. 10, of chap. 71, that the bills or notes of any banking association formed under that chapter, shall be payable at the office where its business is conducted, on demand and without interest, is by express words confined in its operation, to bills or notes which are to be put in *circulation as money*.

The 7th section of the same chapter, which relates to the signing of contracts, notes and bills of any such association, by its president, or vice president, and cashier, applies only to agreements where *both parties* become obligated, and to notes and bills issued for *circulation as money*.

APPEAL from the Circuit Court for *Walworth* County.
*Rockwell* sued the *Elkhorn Bank* as the maker, and Sibley & Mills as indorsers, of the following note:

$2,020 00.        ELKHORN, August 4, 1857.
Seventy-two days after date, for value received, the *Elkhorn Bank* promises to pay to the order of Sibley & Mills,

two thousand twenty dollars, payable at the *Elkhorn Bank*, with interest, at the rate of twelve per cent. per annum.

D. D. SPENCER, *Cashier.*

The evidence tended to show that the note, which was indorsed by Sibley & Mills before its delivery, was given for a balance due to the plaintiff for money deposited in the bank, and for his salary as its president.

On the trial, the defendants asked the court to instruct the jury that the note was void, because the *Elkhorn Bank* had no lawful authority to make and issue it, and because it was not executed in form or substance according to the requirements of chap. 71 of the Revised Statutes, and is not signed by the president of the bank; and that the plaintiff was not a *bona fide* holder, but took it with notice of its illegal character. These instructions were refused. Verdict and judgment for plaintiff.

*A. W. Farr*, for appellant:

The bank had no authority to issue the note, and *Rockwell* is not a *bona fide* holder, as he knew fully such want of authority at the inception of the note. *Safford vs. Wyckoff*, 4 Hill, 442; S. C., 1 id., 11; *Smith vs. Strong*, 2 id., 241; 12 Wheat., 68; 5 Denio, 567; 2 Cranch, 167. The note is not executed according to the requirements of the statute. R. S., chap. 71, sec. 7; 4 Hill, *supra*, and pp. 446-7; 13 Peters, 587. The note is a *post note*, drawing interest, in violation of the statute. Chap. 71, R. S. 1858, sec. 10.

*Winsor & Smith, contra*, as to the power of a corporation to incur debts in the prosecution of its legitimate business, and to give its notes for such indebtedness, cited *Ketchum vs. The City of Buffalo*, 4 Kern., 363; Edwards on Bills, 77; *Moss vs. Oakley*, 2 Hill, 267; *Att. Gen'l vs. L. & F. Ins. Co.*, 9 Paige, 470; *Mott vs. Hicks*, 1 Cow., 513; *Mead vs. Keeler*, 24 Barb., 20; *Curtis vs. Leavitt*, 15 N. Y., 9; 18 U. S. Digest, 152, §§ 62 and 63; *Hamilton vs. New Castle &c. R. R. Co.*, 9 Ind., 359; 17 U. S. Digest, 137 and 138, § 47; *Aggs vs. Nicholson*, 38 Eng. Law and Eq., 308.

Sec. 10 of chap. 71 relates only to notes made by banking associations, to be put in *circulation as money*. The New York statute is different, and the decisions relied upon

by the appellant are inapplicable. A bank has power to
give time paper to pay a debt, if under no statutory re-
straint other than a prohibition of such paper to be put in
circulation as money. *Safford vs. Wyckoff*, 4 Hill, 442, 450,
456; *Carter vs. Leavitt*, 15 N. Y., 9, 10, and 68–72. Sec. 7,
of chap. 71, requiring that notes of banking associations
shall be signed by the president, or vice president, and
cashier, applies only to notes issued to circulate as *money*.

*By the Court*, DIXON, C. J. It is a universally accepted
principle, that corporations authorized generally to engage in
a particular business, have, as an incident to such authority,
the power to contract debts in the legitimate transaction of
such business, unless they are restrained by their charters,
or by statute, from doing so. It is likewise an equally well
acknowledged rule, that the right to contract debts carries
with it the power to give negotiable notes or bills in pay-
ment or security for such debts, unless the corporations are
in like manner prohibited. These positions are abundantly
sustained by the authorities cited by the respondent's coun-
sel. That our banking associations are corporations possess-
ing general powers in relation to the business which they
are authorized to transact, is not questioned. The powers
usually exercised by such institutions are expressly con-
ferred by the 4th section, and in addition it is declared that
they may exercise "such incidental powers as may be ne-
cessary to carry on such business." It is not contended that
the act contains any express words by which they are pro-
hibited from giving negotiable notes or bills, but on the
authority of *Safford vs. Wyckoff*, 1 Hill, 11, and *Smith vs.
Strong*, 2 Hill, 241, it is insisted that they are restrained
by the general frame and scope of the statute, and the policy
which led to its enactment. It is said that if they are al-
lowed to issue negotiable paper independently of the agents
of the state, such paper will take the place of the currency
which they are authorized to issue, and be circulated as
money, and that thus the supervision of the state officers
and the security of the bill holders will be entirely thrown
away. These cases, however, were expressly overruled by

the court of errors in *Safford vs. Wyckoff*, 4 Hill, 442, and that decision has since received the unqualified sanction of the court of appeals. 15 N. Y., 9 ; 19 N. Y., 152.   Without entering into any discussion of matters which are there so fully examined, we may say that the reasoning of the chancellor and senator Hopkins in the court of errors, is far more conclusive and satisfactory to our minds than that of the supreme court.   It clearly appears to us, that like other corporations, these banking associations must, in the absence of express prohibition, be held to have the power to give negotiable notes and bills, by a necessary implication from their power to contract debts in the regular course of their business.   No one denies their power in the last respect. They may make agreements for the purchase or hire of their banking houses, for the payment of rent and the salaries of officers and employees, and for many other purposes necessarily connected with the lawful transaction of their business.   And if they do so, we perceive no reason which would prevent them giving negotiable notes and bills in security or payment of debts thus contracted, which would not operate with equal force to prevent other corporations and private individuals from doing the same thing, unless it should appear that the notes or bills were given under such circumstances and in such form as to make it evident that they were designed as an evasion of the 10th section of the act, in which case they would of course be void.   If executed in the ordinary form of such instruments and for legitimate purposes, we can perceive no possible detriment or wrong which is to result to the public from their use.   Certainly there is no person so ignorant or stupid as to mistake them for the legitimate currency of the bank.   If they are transferred, they pass, like other negotiable paper, upon the responsibility of the makers and indorsers, if they have any. No one would take them, believing them to be secured by a pledge of public stocks, and consequently no one would be deceived or imposed upon.   Neither would they impair the protection afforded by the law to the holder of bills issued pursuant to its authority.   Their security consists in the stocks deposited with the state treasurer, which cannot be reached

except by the redemption of the circulation of the bank. <span>January Term, 1861.</span>
We think, therefore, that such associations may give nego-
tiable notes and bills in the ordinary course of their business, <span>ROCKWELL v. ELKHORN BANK</span>
and that such notes and bills are valid.

By the 10th section of the act, the legislature manifestly
intended to prescribe the form and tenor of bills or notes
which are intended *be put in circulation as money.* Such bills
and notes must be payable at the office where the business
of the association is conducted. They must be payable on
demand and without interest. If not so made they are de-
clared to be unlawful. But this section is, by express words,
confined in its operation to notes or bills issued for that pur-
pose, and was not intended to affect or govern the execution
of negotiable notes or bills of the ordinary character. These
are left to such regulations as to time and place of payment
and rate of interest, as the wishes and convenience of the
parties may dictate, subject to the general laws which gov-
ern such matters.

In the case before us it is not pretended that the note was
given for any unlawful purpose, or in the transaction of any
business which the bank might not lawfully do. It was
given to secure to the respondent a balance due for moneys
deposited, and for his salary as one of the officers of the as-
sociation. The debt was honest and fair, and the law would
have enforced its payment. How then were the interests of
the public, or of third persons, affected by the mere change
of its form? Clearly not at all. Neither is it claimed that
the note was given for the purpose of being circulated as
money. The good faith and honesty of the parties, both in
giving and receiving it, are not called in question. It is
therefore a valid security, unless the objection that it is not
executed in the manner required by section seven is well
taken.

There can be no question as to the power of the legisla-
ture to prescribe the manner in which corporations shall con-
tract ; and when it has so done, the mode prescribed must
be strictly pursued or the contract will be invalid. The sev-
enth section declares that *contracts made by such associations,
and all notes and bills by them issued and put in circulation as*

January Term, 1861.

*money, shall be signed by the president, or vice president, and cashier.* A like provision in the banking law of New York has given rise to much debate and some contradictory decisions in that state. It is discussed in the three cases in Hill, in the last of which it was held to apply only to agreements where both parties became obligated, and to notes and bills issued for circulation as money. This decision was reaffirmed by the court of appeals in *Barnes vs. Ontario Bank,* 19 N. Y., 152, though not without reluctance on the part of some of the members of the court, and it is now the settled law of that state that negotiable bills, notes, drafts and other instruments of that nature, are good if executed by the cashier or other agent properly designated and authorized by the associates for that purpose. The reasoning in support of this restricted application of the word " contracts" is, that if the legislature had intended to apply it to *all* agreements, according to its general sense, then *notes and bills issued and put in circulation as money* would not have been specifically named. The express mention of notes and bills of a particular kind shows that they were not embraced in the general term " contracts," and by implication that no other were intended so to be; and hence, that as to all others, the bank is at liberty to adopt such methods and appoint such agents for their execution as it may see fit. Those who oppose this construction understand the word " contracts" in its general sense. We have concluded to adopt the construction which was finally sanctioned by the courts and has become the settled law of New York, and shall therefore hold that the note was properly executed by the cashier alone.

Judgment affirmed.