THE NORTH HUDSON MUTUAL BUILDING AND LOAN ASSOCIATION, Appellant, vs. THE FIRST NATIONAL BANK OF HUDSON, Respondent.

*September 29, 1890 — February 24, 1891.*

BUILDING ASSOCIATION: *Power to borrow money and pledge securities: Lender not knowing of intent to apply to an unauthorized use, not affected thereby: Estoppel.*

1. A building association, organized and incorporated under ch. 331, Laws of 1876 (ch. 93, R. S.), not expressly prohibited by statute or any by-law from borrowing money, has the same power in that respect as have other corporations, and may do so when it is reasonably necessary in order to carry out the purposes of its organization. It may therefore, on maturity of a series of stock entitling nonborrowing members of such series to payment for their shares, borrow money to make such payment, instead of accumulating funds for that purpose. The power of such an association to make a loan is not derived from or governed by subd. 7, sec. 1748, R. S.

2. Where such a loan has been made by the directors and officers of the association, empowered by its by-laws to manage its affairs, and having power to borrow for a legitimate purpose, the fact that they applied the money borrowed to the payment of shares which had not matured so as to be entitled to payment, does not relieve the association from liability for the loan, if the lender had no knowledge of their intention to apply the money to an improper or unauthorized use.

3. In the absence of any law expressly restraining the directors in that respect, the power to borrow money implies the power to secure

North Hudson Mut. B. and L. Ass'n vs. First Nat. Bank of Hudson.

payment of the loan by assigning bonds and mortgages owned by the association as security, even though they were given by members of other series of stock.

4. The association having received the money loaned and applied it to one of the legitimate purposes of its organization, is estopped from setting up a want of power to make the loan.

5. The association has its remedy against the stockholders to whom the money was paid, if they were not entitled thereto, and is estopped as against the lender from alleging a want of power to borrow, or the unauthorized use of the money, without offering to refund that which it has received and used for its own benefit.

APPEAL from the Circuit Court for *St. Croix* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was commenced by the appellant against the bank to recover the possession of certain bonds and mortgages which had been given to said association upon loans made by said association to different persons.

The action was replevin, and the bonds and mortgages were taken from the possession of the bank. The bank claimed the right to the possession of such bonds and mortgages as security for the balance claimed to be due it upon a loan made by said bank to said association.

The facts, as clearly established on the trial, are as follows: In 1885, the president, secretary, and one of the directors of said association applied to said bank for a loan of $6,000, agreeing to pledge the mortgages in question as security for said loan. At the time of making the application for said loan, these officers of the association stated that the association had authorized them to make such loan. After considering for some days, the bank concluded to make the loan, and did make it, taking a note for the amount, and paying the money upon the orders of the corporation, within a short time after the loan was made, and the notes and mortgages were assigned to the bank as security for the loan. The evidence satisfactorily shows

that the said officers of the company made this loan for the purpose of paying off certain stockholders of the corporation, whose stock was supposed to have been fully paid up at the time, and to whom the money was at the time supposed to be due. The evidence also shows very clearly that the entire sum of $6,000 loaned from the bank was in fact paid to the stockholders of the company, and no part thereof has ever been refunded by them to the bank. It is also shown by the evidence that the money becoming due on said loan has been paid by the officers of the association from time to time, and new notes have been given for balances, and, at the time of the commencement of this action, the amount of said loan and the interest thereon had all been paid, except the sum of about $1,500.

The claim made by the plaintiff association is that the officers of the company had no power, under the laws conferring corporate powers upon the association, to borrow said money for the association, or to bind the association to pay the money so borrowed, or to pledge the bonds and mortgages of the association to secure the payment of said loan, or any part thereof. It is also claimed that the officers had no right to borrow the money for the purpose of paying off the stockholders to whom the money was in fact paid, because it is claimed that, at the time the money was borrowed and paid to them, their stock had not yet been fully paid up as required by the articles of association to entitle them to such payment in full. There is no evidence tending to impeach the good faith of the bank in making the loan, or which tends to show that the officers of the bank had any knowledge that the association had not authorized its officers to make said loan at the time the same was made, or at the time the bank paid over the money upon the orders of said association, nor that they had any knowledge that the money paid to the stockholders was not in fact due to them at the time it was paid to them.

North Hudson Mut. B. and L. Ass'n vs. First Nat. Bank of Hudson.

After hearing the evidence in the case, the learned trial court directed the jury to find a verdict in favor of the bank, and from the judgment entered in defendant's favor the plaintiff appeals to this court.

For the appellant there were briefs by *Bashford & Disney* and *R. H. Start*, and the cause was argued orally by *R. H. Start, J. W. Bashford*, and *R. M. Bashford*. Among other things, they argued that the statute under which the appellant corporation was organized (ch. 331, Laws of 1876), gave it no power to borrow money, or to assign its bonds and mortgages as security for a loan. *Thomas v. West Jersey R. Co.* 101 U. S. 71–87; *Madison, W. & M. P. R. Co. v. W. & P. R. Co.* 7 Wis. 59; *Rock R. Bank v..Sherwood*, 10 id. 230; *Waldo v. Chicago, St. P. & F. du L. R. Co.* 14 id. 575; *Dietrich v. Madison R. Asso.* 45 id. 79; *Luthe v. Farmers' M. F. Ins. Co.* 55 id. 543; *Davis v. Old Colony R. Co.* 131 Mass. 258; *Downing v. Mt. Wash. Road Co.* 40 N. H. 230; *Rochester Ins. Co. v. Martin*, 13 Minn. 59; *New York F. Ins. Co. v. Ely*, 5 Conn. 560; *Hood v. N. Y. & N. H. R. Co.* 22 Conn. 502. The specific grant of certain powers is an implied prohibition of the exercise of other powers. *People v. Utica Ins. Co.* 15 Johns. 383; *Beech v. Fulton Bank*, 3 Wend. 573; *Utica Ins. Co. v. Scott*, 19 Johns. 1; *Same v. Kipp*, 8 Cow. 20; *Beaty v. Knowler*, 4 Pet. 152; *C. & N. W. R. Co. v. James*, 22 Wis. 194; *Walworth Co. Bank v. Farmers' L. & T. Co.* 14 id. 325. A building association has no power to borrow money, unless specially authorized to do so. *Jamison v. Savings Bank*, 9 N. Y. S. R. 366; *In re Nat. Perm. Bld. Soc.* L. R. 5 Ch. App. 309; *In re Nat. Perm. Bld. Soc.* 22 L. T. Rep. (N. S.), 284; *In re Vict. Perm. Bld. Soc.* id. 777; Endlich, B. & L. Asso. secs. 297, 301. Nor have its officers power to do so, except for the purposes and to the extent specified in its charter or by-laws. Nor have they power to assign or deposit as security for a loan the mortgages held by it;

especially, not without the knowledge and consent of the directors and stockholders. *Moye v. Sparrow*, 18 Weekly Rep. 400; *S. C.* 22 L. T. Rep. (N. S.), 154; *Banks v. Hamlin*, 14 Mass. 180; *Banks v. Barry*, 17 id. 97; *Jackson v. Campbell*, 5 Wend. 572, *Hoyt v. Thompson*, 5 N. Y. 334; Jones, Mortg. sec. 798; Boone, Mortg. sec. 89. These unauthorized acts of the officers, if capable of ratification, have not been ratified by the association.

*Ray S. Reid* and *H. L. Humphrey*, for the respondent. The following opinion was filed November 25, 1890:

TAYLOR, J. Upon this appeal the learned counsel for the appellant assigns as error: (1) That the court erred in admitting the assignment of the bonds and mortgages in question, and the several notes given to the defendant, in evidence, for the reason that the corporation had no authority or power to make the same, or either of them; the second, third, fourth, and fifth assignments of error go upon the ground that said notes and the assignment of said mortgages were not authorized by the corporation, or its board of directors, or made with its knowledge or consent; the sixth assignment of error was the refusal of the court to permit the witness Nelson, one of the directors, to testify as to how and when he learned of said assignment; the seventh error assigned is the exclusion of the evidence offered by the plaintiff to show that the first series of stock was not due when the holders of it were paid off by the officers of the company with the money borrowed from the defendant; (8) in refusing to permit the plaintiff to show that Harvey's annual report of 1886 was not in fact read at the annual stockholders' meeting in 1886; (9) in refusing to admit in evidence the minutes and memoranda left by Secretary Harvey, as bearing upon the question whether the directors had authorized the loan; (10) in admitting incompetent evidence, etc.; (11) in excluding com-

North Hudson Mut. B. and L. Ass'n vs. First Nat. Bank of Hudson.

petent evidence offered by the appellant; (12) in refusing to submit the case to the jury; (13) in directing a verdict for the defendant; and (14) in refusing to set aside the verdict and grant a new trial.

One of the important questions involved in this case is whether the plaintiff corporation had the power, under any circumstances, and for any purpose, to make the loan it did in this case; and the next most important question is, if it should be found that the corporation had no legal authority to borrow money, whether having in fact through its officers borrowed the money, and applied the same to the purposes of the corporation, the corporation is now estopped from setting up its want of power to borrow the money in question so applied to its legitimate purposes; and it seems to us these are the only material questions in the case. If one or both of these questions be determined in favor of the defendant, then it seems to us the other assignments of error by the learned counsel for the appellant become immaterial to a rightful determination of the case.

To determine the first question it becomes necessary to inquire what are the objects and purposes of the corporation, and from such objects and purposes to determine whether it is consistent with and reasonably necessary, under certain circumstances, for the corporation to borrow money to accomplish the purposes of the organization; and if it be found that, under some circumstances, the purposes of the corporation can only be conveniently and reasonably carried out by borrowing money, then, under the adjudicated cases, in the absence of any express provision forbidding the corporation from borrowing, the corporation may do so. *Madison, W. & M. P. R. v. Watertown & P. P. R. Co.* 5 Wis. 173; *Blunt v. Walker,* 11 Wis. 334; *Rockwell v. Elkhorn Bank,* 13 Wis. 653; *Germantown F. M. Ins. Co. v. Dhein,* 43 Wis. 420; *Union Water Co. v. Murphy's F. F. Co.* 22 Cal. 620; Davis, Bldg. Soc. 183, 184; *Wright v. Hughes,* 119

Ind. 324. In the case of *Rockwell v. Elkhorn Bank, supra,* Chief Justice Dixon says: "It is a universally accepted principle that corporations organized generally to engage in a particular business have, as incident to such authority, the power to contract debts in the legitimate transaction of such business, unless they are restrained by their charters or by the statute from doing so. It is likewise an equally well acknowledged rule that the right to contract debts carries with it the power to give negotiable notes or bills in payment of or security for such debts, unless the corporations are in like manner prohibited." The correctness of the decision of this court in 13 Wis., above cited, has never been questioned; and it is undoubtedly well sustained by the decisions of other courts. If, therefore, it can be shown that the loan association, the plaintiff in this action, in order to properly carry on its business, has the power to contract debts or borrow money as a legitimate way of carrying on such business, then it may do so, and give its notes or other proper security for the money loaned.

The law which now controls such associations will be found in secs. 2009–2014, S. & B. Ann. Stats. p. 1204. Sec. 2009 says: "Any five or more persons may form a mutual savings fund, loan, or building corporation, in the manner prescribed in chapter 86, and thereupon such corporation shall have all the powers and privileges, and be subject to all the liabilities, conferred and prescribed by this chapter, and such other powers conferred on corporations by these statutes as are necessary or proper to accomplish the purposes prescribed by its articles of association."

The section above quoted is the first section of ch. 93, R. S. 1878, and the following sections above cited constitute the whole of said chapter as originally contained in the Revision of 1878. It will be seen by an examination of these sections that there is nothing in any of them which in express terms prohibits the association from borrowing money.

Without quoting the other statutes of the state which are referred to in the latter part of said sec. 2009, we will say generally that there is nothing to be found which necessarily prohibits a corporation organized under ch. 93 from borrowing money for legitimate purposes.   The objects of this corporation, as stated in its articles of association, are as follows: " This corporation [giving its name] shall have for its object the accumulation of funds to be loaned to its members to enable them to purchase real estate, build houses, satisfy mortgages, or make such other investments as they may deem proper."   In looking over the other articles and by-laws of the corporation, nothing can be found which prohibits the corporation from borrowing for the purposes of the corporation.   We conclude, therefore, that the right of this corporation to borrow money for the purposes of its legitimate business is affirmed by the decisions above cited in this court.   The power of a corporation of this kind to borrow money is indirectly recognized by the legislature of this state.   In an act passed in 1889 (ch. 225, Laws of 1889; S. & B. Ann. Stats. p. 1209), sec. 13 requires all such associations or corporations to make annual reports, and deposit them in the office of the commissioner of insurance, showing particularly the standing of such corporations; and such act specifies particularly what such report shall contain.   Under the *fourth* head of the report it is required that the corporation shall state: " (1) The value of the shares, which shall consist of a statement of all monthly dues paid thereon, together with accumulated profits, showing the amount of each; (2) losses arising from foreclosure of mortgages or otherwise; (3) *the amount of money borrowed and security given for the payment thereof*; and (4) the amount of all other existing claims against the association."

These requirements made by the legislature fairly imply that the legislature supposed that these corporations had

the power to run in debt by borrowing, or in other ways. It is, however, strongly urged by the learned counsel for the plaintiff that the legitimate business of the corporation excludes the idea of its right to borrow money; in fact, that the right to borrow is destructive of its purpose, and cannot be a legitimate exercise of its corporate powers in any case, and therefore it does not come within the rule stated by this court in the cases above referred to.

By an examination of ch. 93, R. S., and the articles of the corporation, we find that the general purpose of the corporation is to collect small monthly payments from its stockholders, and then loan the money so collected to its members to enable them, as said in the first article of the association, to purchase real estate, build houses, satisfy mortgages, or make other investments as they may deem proper. And, from an examination of the by-laws and the articles of association, the corporation is required to make loans of the money received to its members, upon their giving satisfactory security, and that the loans shall be made to the stockholders offering to pay the largest premium therefor; and such loans are not subject to the law concerning usury. The profits of the corporation arise from the monthly payments, the premiums received on the loans made, the interest upon the loans, and from fines and penalties incurred by the members under the by-laws and rules of the company; and it is generally understood that, in a well-regulated corporation, the monthly payments, the interest, premiums, and moneys received from fines and penalties will so accumulate that in between eight and nine years after the organization the shares of the stockholders will become worth their par value. This supposed result applies to a corporation like the plaintiff, where the shares are $200 each, and the monthly payments one dollar per share, and the interest collected upon loans is six per cent.

per annum, payable also in monthly instalments, and also including the premiums and fines.

This corporation is authorized by its articles of incorporation to issue 500 shares of stock of $200 per share, and to issue such stock in series as the corporation may direct. It appears that the first series of stock issued was something like 150 shares, or $30,000. The exact amount does not appear from the record, nor does it appear what amounts of stock were afterwards issued in series; but it does appear that five series of stock were in fact issued in all. It also appears that the corporation had been doing business about eight and one-half years when the loan was made from the bank, and that the loan was made for the purpose of paying off some of the stockholders of the first series, who had not been borrowing members, and who would therefore be entitled to receive the amount of the par value of their stock from the corporation, in case the accumulations of the corporation had been enough to make their stock worth its par value. I have looked into the by-laws of the company, and do not find in them any directions given to the officers, or prescribing the manner of paying off the stockholders whose stock has become worth its par value; but it is apparent, not only from the law providing for these corporations, but from the by-laws, that when the profits and accumulations of the corporation are such as to make the stock of any stockholder worth its par value, such stockholder is no longer required to make further payments on his stock, or entitled to any further additions to the value of his stock; and we conclude, therefore, that the stockholder must then be entitled to receive from the corporation the par value of his stock, and he thereupon ceases to be a stockholder of the corporation.

In the absence of any rules or regulations in regard to the rights of stockholders in a corporation of this kind,

where the stock is issued in series, we think Mr. Endlich, in his work on corporations of this kind, properly defines what they are; and I quote his views as fairly defining the rights of the stockholders of the several series when not otherwise expressly provided for by the laws or by-laws of the corporation, viz.: " Associations which, their duration being limited, instead of issuing all the stock to the full extent allowed by law or charter, at once divide it up into series, and issue them successively, each class or series being then treated to some extent as a separate association distinct from the others, but with them sharing in the profits of the concern.  A society founded on this plan will issue as many shares as are thought advisable during the first year, and those will run their course to the final result, precisely as those issued by a society on the plan first described.  At the end of the first year the total number of shares of this ' first series ' participates in the profits, their value is ascertained, and a new or ' second series ' is issued of as many shares as it appears advisable to sell. The payments on this second series commence with their issue, and they may in their turn run the same course as the 'first series' till, at the end of the second year, the sum total of the income for it is divided by the whole number of shares in both series, and their value again ascertained. Thus the shares of the first series will be found to have the value of two years' subscriptions, to which is added the profit made during the two years on each share, while the shares of the second series will be worth the amount of only one year's subscription and one year's profit; and so on, each year producing a new series of stock, and the sum total of subscriptions and profits being divided at the end of each year by the number of shares of all the series then issued (with the exception of course of such shares as may have been withdrawn).  By the time the eighth, ninth, or tenth series is issued, according to the success of the so-

ciety, the first series will have reached its ultimate value, and its members will receive that amount in cash, or, if they be borrowers, its equivalent by cancellation of their loans. Suppose, therefore, that the society has twenty years to run, then, from the first to the tenth year, the society issues a new series of shares every year, and after that a series is canceled every year."

Under a corporation of this kind, it is evident that the stockholders, who have not become borrowing members of the several series, except the last series, will be entitled to receive from the corporation the par value of their stock before the corporation ceases to do business, and the corporation will have full power to pay off the holders of such stock, and, if it should refuse to pay them, the stockholders could enforce payment from the company, in the absence of any law prescribing how they could compel payment by an action in equity. See End. Bldg. Ass'ns, § 490, and cases cited.

In conducting the business of a corporation of the serial order, when a considerable portion of the stockholders are not borrowing members, it might be not only a just but a beneficial way of conducting the business to loan the money received in the usual course of business to the members of the corporation who were willing to borrow the same and pay large premiums therefor, and not keep the same on hand to the detriment of all the members, and accumulate it, in order to be prepared to pay off the series of stockholders not being borrowing members whose stock became of its par value, and when the necessity for payment arrived make a temporary loan to pay off said members. It seems to us that this would not be an unreasonable way of conducting the business of the corporation, and that it could, if it saw fit, make a loan for that purpose, there being no statute or by-law of the company expressly prohibiting the corporation from so doing. We must conclude, therefore,

that the corporation had the power to make a loan for the purpose of paying off the stockholders of the first series when their stock became of its par value.

The learned counsel for the appellant insist that, if this be admitted, then the court erred in excluding evidence offered on the trial to show that the stockholders who were in fact paid off with the money loaned were not entitled to be paid off at the time, because their stock had not become of its par value by the profits made by the company at that time. Upon this point we think the ruling of the court was correct. There was no evidence offered tending to show that the officers of the bank were aware that the money was not due to the parties who received the same, or that the officers intended to apply the money borrowed to an improper use. One of the by-laws of the company confers upon the board of directors the power to manage the affairs of the corporation. It reads as follows, viz.: "The directors, together with the president, vice-president, treasurer, and secretary, shall form a board of directors for the transaction and management of the affairs of the corporation, and shall be selected," etc. The evidence is quite sufficient to show that this money was borrowed by the direction of the board of directors, and, as to the note for the balance of the amount due the bank, the board ordered payments to be made thereon. If the board had the power to borrow the money for a legitimate purpose, the corporation cannot defeat a recovery by the bank for the money borrowed on the ground that the board applied the money borrowed to an unauthorized purpose, unless they show that the bank knew that the purpose for which the money was borrowed was unauthorized, and there is no pretense that the bank had any such knowledge.

The question of the right of a corporation of this kind to borrow money under statutes similar to ours has been passed upon by the courts of other states, as well as of

North Hudson Mut. B. and L. Ass'n vs. First Nat. Bank of Hudson.

England; and in many cases it has been held that the power to borrow money is implied by the laws under which they are organized. *Jones v. National Building Ass'n*, 94 Pa. St. 215; *Davis v. West Saratoga Building Union*, 32 Md. 285; *Jackson v. Myers*, 43 Md. 452; *Muth v. Dolfield*, 43 Md. 466; End. Bldg. Ass'ns, §§ 294–301.

It is further urged that, if it be admitted that the corporation by its board of directors had the power to make the loan in question, still there was no power to assign the bonds and mortgages of the corporation to secure its payment, and that the assignment and pledge of them are void. We think the power to borrow implies, in the absence of any law expressly restraining the board, the power to secure the payment of the loan by an assignment of the mortgages and bonds of the other members held and owned by the corporation, and to make the assignment of them for that purpose. In this case the bonds and mortgages are made on their face assignable by the company. It is said it is unjust to assign the bonds and mortgages given by members of the subsequent series to secure the payment of the money due to the stockholders of the first series. There could be no injustice in so doing, if the money was in fact due to the first series. The payment could be enforced by them in equity from the moneys to become due on such bonds and mortgages, in the absence of any other resources of the company, and we know of no other resources which the company would be likely to have. The pledge of these mortgages and bonds to the bank can work no injury to the men who gave them. Any payments made on them for the benefit of the bank will inure to their benefit the same as though it had been paid to the corporation.

There is another ground upon which we think the judgment in this case must be sustained. The corporation has received the money loaned, and applied it to the legitimate purposes of the company in paying off the first series of

stockholders. So far as this payment was justly due to such stockholders, all the other stockholders are benefited by it, and they cannot retain the benefit of the application of the money loaned by the bank, and refuse to pay the loan. The plaintiff is estopped, by the receipt and application of the money to a legitimate purpose of the corporation, from setting up a want of power in the corporation to make the loan. The corporation cannot reap the benefit of the money loaned, and then allege a want of power to make it. *O. & M. Railway Co. v. McCarthy,* 96 U. S. 258, 267; *Whitney Arms Co. v. Barlow,* 63 N. Y. 62; *Union Water Co. v. Murphy's F. F. Co.* 22 Cal. 620; *Sussex R. Co. v. M. & E. R. Co.* 19 N. J. Eq. 13; *Close v. Glenwood Cemetery,* 107 U. S. 466; *Shrewsbury & B. R. Co. v. L. & N. W. R. Co.* 16 Beav. 441, 451; *Auerbach v. Le Sueur Mill Co.* 28 Minn. 291; *Wright v. Hughes,* 119 Ind. 324; *Jones v. National Building Ass'n,* 94 Pa. St. 215; *Williams v. Stevens Point L. Co.* 72 Wis. 487, 496; *Manufacturers' & M. S. & L. Co. v. Conover,* 5 Phila. 18, 20; End. Bldg. Ass'ns, § 286.

In this view of the case, the learned counsel for the plaintiff insist it was error to exclude the evidence offered to show that the stockholders of the first series were not entitled to their money. That is no fault of the bank, and, so far as the officers of the company are concerned, it is highly probable that they supposed it was all due; and, if it was not due to the stockholders, the corporation can maintain an action against them to recover it back for the benefit of the corporation. It certainly would be a matter of great doubt whether the bank could have any action against these stockholders to recover their money back if they cannot recover it of the company. We think the authorities are abundant to show that the corporation is estopped from alleging a want of power to borrow the money in question without offering to refund the money

already advanced and used for the benefit of the corporation.

We do not deem it necessary to inquire whether the corporation had the power to make this loan under the provisions of the general law concerning corporations,— viz., subd. 7, sec. 1748, R. S. 1878,— which gives the power to all corporations to borrow money when not expressly prohibited by law, in the following language: "To borrow money for the purpose of the corporation and no other, with the consent of a majority of its stockholders, or, if not a stock corporation, of a majority of its members." We do not place the power of the corporation to borrow the money in question under the provisions of this section, and we are of the opinion that, if the power was claimed to have been acquired solely under said section, then the court erred in excluding evidence offered by the plaintiff tending at least to show that the stockholders never had consented to such borrowing, and also in directing a verdict for the defendant, as the question as to whether the majority of the stockholders had ever consented to this loan was certainly one for the jury, and not for the court. Upon the two grounds above stated, we think the court properly directed a verdict for the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.

Upon motion for a rehearing there was a brief signed by *Bashford & Disney* and *R. H. Start*, attorneys, and *Bashford, O'Connor & Polleys*, of counsel. They argued that the association was not estopped to deny the validity of the transaction, at least so far as concerns the sum remaining unpaid on the loan. It is not bound to return the entire consideration before demanding back the securities, but only so much as has been properly applied to the legitimate purposes of its organization. *Hollenback v. Shoyer,*

The Great Western Tel. Co. vs. Burnham and others.

16 Wis. 499; *Tobey v. McAllister*, 9 id. 463; *Williams v. Fitzhugh*, 37 N. Y. 444; *Warren v. Chapman*, 105 Mass. 87; 1 Jones, Mortg. secs. 620, 321; 2 Pomeroy, Eq. Jur. sec. 704. The bank was chargeable with notice of the want of power in the officers to make the loan and pledge the securities. *Alexander v. Cauldwell*, 83 N. Y. 480.

The motion was denied February 24, 1891.