## 'Appeal of POWELL AND DOYLE.

### Kansas City Court of Appeals, March 3, 1902.

1. **Building and Loan Associations: RETIREMENT OF STOCK: STATUTORY CONSTRUCTION.**   Building and loan associations are purely creatures of the statute having such powers only as are thereby conferred, and in the retirement of stock can only use the proportion of the monthly receipts allowed by the statute.

2. ———: **BORROWING MONEY: TEMPORARY PURPOSE: RETIREMENT OF STOCK.**   Building and loan association may borrow money for temporary purposes, but the retirement of stock is not a temporary purpose and can only be effected out of the monthly cash receipts.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan,* Judge.

AFFIRMED.

*Wm. S. Shirk* ·for appellants.

(1)   There is no legal force to the contention, made by the receiver, that the stock could not be legally cancelled, except by the payment of cash, and that the association had no power to issue the notes in lieu of the cash.   By the Act of 1895 (R. S. 1899, sec. 1369) under which the association was being operated when this stock was cancelled, the association was authorized to pay eight per cent interest on the matured value of shares, from the date of maturity until such value was paid.   This provision evidently contemplated that the association might not always have on hand the money to pay off matured shares.   The same rule would apply to shares

matured by cancellation. (2) Again, the same Act of 1895 (sec. 1372, R. S. 1899) provides that the association shall have power to borrow money "for temporary purposes, not inconsistent with the objects of their organization." Surely, to borrow money to pay off stock matured by cancellation would not be inconsistent with the object of the organization. And if the association had power to borrow the money from A to pay B for his cancelled stock, why may not B loan his money for a time to the association, and take their note, payable at a certain time with interest? The case of Commonwealth v. B. & L. Ass'n, 4 Dauph. Co. Rep. 15, is exactly in point. (3) The power of the association to issue notes in payment of stock cancelled is tacitly upheld, if not expressly affirmed, in State ex rel. Gray v. B. & L. Ass'n, 80 Mo. App. 585. Comw. v. B. & L. Ass'n, 4 Dauph. Co. Rep. 15; State ex rel. v. Scarpaci, 86 Mo. App. 301; Ricket v. Suddard, 184 Ill. 149. (4) Suppose the association had no statutory power to give these notes, and thus in effect borrow claimant's money, yet it actually did so. It got the benefit of their money. Shall it be heard to say, "I borrowed your money and have it in my coffers, but I am not liable for its payment, because I had no authority to borrow it from you?" Grohmann v. Brown, 68 Mo. App. 630. (5) The notes cut no figure in the case. They but represent the consideration, and attest the fact, that the right of cancellation had been carried into effect and consummated. The association promised to pay the cancellation value. The claimants have fully executed their part of the contract, and the association is now estopped to plead *ultra vires* as a defense for failure to execute its part. Endlich on B. & L. Ass'ns (2 Ed.), sec. 82; Id., sec. 105.

*Charles E. Yeater* for exceptor.

The stock in question could not be legally withdrawn except out of one-half of the cash receipts of previous fiscal

months as provided by the statutes, whereas the record shows that at the close of business on August 31, 1898, the total cash on hand was only $2,057.67, and that on the day following, the Sisson or Powell stock was cancelled by the issue of four notes for $3,700, and ten days afterward the Doyle stock was cancelled by the issue of two notes for $1,700, and further shows that the total cash withdrawals from this time until the receivership only amounted to $1,731.50. Sec. 1370, R. S. 1899; Maloney v. Real Estate B. & L. Ass'n, 57 Mo. App. 384; Thompson on Building Ass'ns (2 Ed.), p. 292; Endlich on Building Ass'ns, sec. 114, et seq.

BROADDUS, J.—On the thirtieth day of June, 1899, H. L. Gray, the supervisor of building and loan associations, filed, in the office of the clerk of the circuit court of Pettis county, a petition to the effect that the defendant was wholly insolvent and asking the court to appoint a receiver to take charge of the assets of the association, and for all other necessary orders.

To the petition the defendant filed an answer in which its insolvency was admitted and that its assets were insufficient to justify further continuance in business, whereupon the judge of said circuit court appointed said H. L. Gray receiver of said association, and "afterwards appointed Lee Montgomery and L. U. Crawford referees, to hear claims of general creditors and stockholders against said association, to take evidence concerning the same, and to report their action upon such claims, allowing or disallowing the same."

Afterwards, appellant W. H. Powell presented to said referees for allowance two certain notes given by said Equitable Savings and Loan Association to one A. M. Sisson, and by her duly assigned to said W. H. Powell, both dated September 1, 1898, one for $900 and the other for $1,000, drawing eight per cent interest from date. And appellant Kate Doyle presented to said referees for allowance, two promis-

sory notes given by said association to her, dated September 10, 1898, one for the sum of $800, and the other for the sum of $900, both drawing eight per cent interest from date, which said notes the said referees reported to the said court should be allowed to said Powell and Miss Kate Doyle, respectively, and they were consequently allowed. In due time the receiver filed exceptions to the allowance of said claims of both appellants for the following causes: First. Because the notes were issued to A. M. Sisson, assignor of appellant Powell, and to appellant Doyle as shareholders in cancellation of their stock by said association, in violation of law, and that said Powell as assignee took his said notes with full knowledge that they were so issued in violation of law. Second. Because said association had no power to cancel the stock of said Sisson and Doyle at the time of the execution of said notes. Third. Because said cancellation of said stock was not effected in the order and manner provided by law.

We have given the substance of the exceptions to each claim allowed by the referees. The cases are to be heard together. The circuit court sustained the exceptions of the receiver, from which the claimants have appealed.

On the hearing it was shown that appellant Powell became the owner of the two notes described, with full knowledge of all the facts, and there was some evidence tending to show that at the time the shares of stock belonging to Sisson and Doyle were presented for retirement and cancellation, the defendant association was insolvent. We gather from the record in the case that at the time the shares of stock, respectively, were presented for retirement and cancellation, and at the dates the notes in question were executed, there were not sufficient funds in the treasury of the association to redeem the stock as provided by section 1370, Revised Statutes 1899 (Laws of 1895). Said section, pertaining to the issue involved here, is as follows:

"Any shareholder, or legal representative of any de-

ceased shareholder, wishing to withdraw from the said corporation, shall, subject to the provisions of the by-laws, and his certificate of stock and the *limitations hereinafter mentioned* (the italics are ours), have power to do so, upon giving one month's written notice of his intention to do so, delivered to the association at or before a stated meeting of the directors, or at such other time as the by-laws may provide. . . . The member so withdrawing, or, if deceased, his legal representative, shall, if his stock be withdrawable according to the terms of the contract, be entitled to receive, on demand, the amount actually withdrawable at the time of making application for withdrawal, according to the by-laws of the corporation and the provisions of the certificate of stock. At no time, however, shall *more than one-half of the receipts of the corporation for any fiscal month,* and, when the corporation is indebted on matured shares of an earlier series, not more than one-third of said receipts, *be applicable to the demands of the withdrawing shareholders,* or of shareholders whose stock has been forfeited in the manner hereinafter provided," etc.

The *limitations* prescribed by said section are referable to that part which provides how the demand of the withdrawing shareholder shall be met, viz., by the monthly cash receipts of the association, not more than one-half of which at any time can be used in payment of withdrawal stock. Any other manner adopted by the association would be a substitution for that provided by the statute. The defendant is purely a creation of the statute, having only such powers as the statute gives and such as are necessarily implied. But we have not seen any authority which in the least lends countenance to the suggestion, that when a corporation is clothed with certain limited powers, guarded with the most explicit directions for the manner of their exercise, that it is in the province of such corporation to depart from such directions in the conduct of its business. In this instance, the defendant corporation, instead of complying with the directions of the statute quoted,

when the stock in question was presented, by retiring and cancelling it, and satisfying the holders from the cash monthly receipts in its treasury, resorted to the expedient of giving the notes of the association. If the cash receipts of the month on hand had not been sufficient for that purpose, then the retirement of the stock could not have been legally accomplished. This is too plain for controversy. Such a course of procedure wholly ignores the explicit mandatory provisions of the statute. It was a flagrant violation of the association's charter.

But it is claimed by the appellants that under the law the defendant had the right to borrow money, and the giving of the notes by the association was in effect borrowing so much money. It is true that if the by-laws of the defendant authorized the borrowing of money, the statute permitted it to so do for temporary purposes, but only for temporary purposes. See section 1372, *idem.* But we do not think that it can be seriously claimed that the giving of the notes in question, if construed as a loan, can be characterized a loan for a temporary purpose. No building and loan expert would so consider it. We will mention one instance which will illustrate what the statute means in the language used "for temporary purposes." If the association has contracted a loan to a borrower and does not have all the money on hand when. the time comes to let it out, it may borrow temporarily to supply the deficit. But money borrowed for such purposes could not, under the statute, be applied to withdrawals. In such cases the funds must come out of the monthly cash receipts of the corporation, acquired through the ordinary channels of its business.

There are other questions raised in the case, but as this decision goes to the right of appellants to recover as creditors of the association, it is not necessary that they should be noticed.

The causes are affirmed. All concur.