16 P.(2d) 394

## SUNDT v. MUTUAL BUILDING & LOAN ASS'N OF LAS VEGAS.

### No. 3847.

Supreme Court of New Mexico.

Nov. 18, 1932.

Charles W. G. Ward, of East Las Vegas, for appellant.

M. E. Noble, of East Las Vegas, for appellee.

E. K. Neumann, Atty. Gen., of Santa Fé, amicus curiæ.

SADLER, J.

The plaintiff, who is cross-appellant on this appeal, as the holder of twenty shares of the capital stock in the Mutual Building & Loan Association of Las Vegas, sought by complaint in the district court of San Miguel county to restrain the association as defendant from making a certain loan from Las Vegas Savings Bank. It appeared from the complaint that defendant, in anticipation of the collection of dues and interest owing to it, desired the proposed loan, which was to be in the sum of $5,000, for three stated purposes, to wit: First, to meet promptly applications for withdrawals; second, to repay borrowed money; and, third, to pay off matured stock in the association. The plaintiff alleged that defendant was without power to borrow said money, that its act in so doing would be ultra vires, and that it likely would result in expensive litigation, to the great injury of defendant's stockholders.

The defendant answered admitting that it proposed to secure the loan for the purposes alleged, but denied that it was without power to do so. On the contrary, while conceding that it was without express power in such behalf, it sought to justify the proposed action as within its implied powers, as necessary and incidental to the purposes of its incorporation. The defendant, as appeared from the pleadings, is a mutual building and loan association organized and existing under the laws of the state of New Mexico. The proposed loan was by authority of a resolution duly adopted by its board of directors. Only one director, the plaintiff, voted against the adoption of said resolution.

The trial court found that the defendant was a solvent and going mutual building and loan association without express authority in its charter to borrow money, but that its by-laws purported specifically to confer such power. The court concluded as a matter of law that the defendant, even in the absence of express statutory power, was authorized (1) to borrow money in order to pay existing indebtedness lawfully created; (2) to pay off matured stock in the association; but (3) that it lacked such power with respect to the demands of withdrawing stockholders. Accordingly, the court confined its injunctive order to restraint against defendant from using any of the proceeds of the proposed loan to pay the demands of withdrawing stockholders. By appropriate exceptions and requests for findings and conclusions, each party reserved below the grounds of review upon which each in this court by appeal and cross-appeal, respectively, seeks to set aside so much of the decree of the trial court as fails to sustain his or its position in entirety.

The defendant association was organized under the provisions of chapter 108, Laws 1889, appearing as chapter 18, Comp. 1929 (section 18-101 et seq.). All of the provisions of said chapter 18, in so far as they related

to domestic building and loan associations, except sections 123 to 125, calling for reports to and examinations by state bank examiner, were expressly repealed by chapter 147, § 15, Laws 1931. It is to this act, and to the general corporation laws of the state in so far as made applicable to building and loan associations by sections 32-234 and 32-235, Comp. 1929, as well as to the implied powers appertaining to associations of this kind, that we must look for the purpose of finding the power here sought to be exercised, if it exists at all. Section 3 of chapter 147, Laws 1931, among other things, provides: "Any stockholders wishing to withdraw from the corporation shall have power to do so by giving notice thereof at a stated meeting of the Board of Directors, and thereupon shall be entitled to receive at the next stated meeting of such Board the amount paid for dues, and such interest thereon, or so much of the profits thereon, as may be fixed by the By-laws; provided, that at no time shall more than one-half of the funds in the Treasury of the corporation be applicable to the demands of withdrawing stockholders without the consent of the Board of Directors, and no stockholder shall be entitled to withdraw whose stock is held in pledge for security." The right of withdrawal, conferred by the foregoing section, is in substantially the same language as when it appeared as a part of section 18-103, Comp. 1929, which the 1931 act repealed.

Section 18-113, Comp. 1929, gave such associations express power to borrow money in the following language, to wit: "Any such association may allow reasonable compensation to its auditing committees for their services as such, and may for the legitimate purposes of such association, on a vote of a majority of all its directors, borrow money in anticipation of payment of dues." This section was repealed by section 15, chapter 147, Laws 1931, and no substitute for it was carried forward into the new act.

The general corporations laws of the state are by section 32-234, Comp. 1929, extended to building and loan associations as well as to certain other corporations organized under special acts. However, the extent of the application of the general laws is somewhat neutralized by the language of section 32-235, declaring such laws applicable only in so far as same could be enforced consistently with the special acts under which the enumerated corporations were created, and by the proviso: "Provided, however, that the powers to be exercised by corporations already incorporated under the special acts under which they may be incorporated or by the articles of incorporation, shall not be held to be extended by this provision. (L. '05, Ch. 79, § 132; Code '15, § 1015.)"

Express power to borrow is not to be found in chapter 147, Laws 1931. However, by section 5 of said act, such associations are given the power to purchase at any sale real estate upon which they may have a mortgage or a loan. And with respect thereto, it is provided in said section: "And the real estate so purchased may be conveyed, leased or mortgaged, at the pleasure of the corporation."

Among the enumerated powers conferred upon such associations by section 1 of chapter 147, Laws 1931, will be found the following, to wit: " * * * Said certificate shall be executed * * * and * * * filed * * * and thereupon said corporation shall be deemed fully organized and shall be a body corporate and politic for the period for which it is organized, may sue and be sued, may have a common seal, which it may alter, or renew at pleasure, and shall possess all other powers incident to, or necessary for, the purpose of properly carrying on its business."

First, we determine the effect of the repeal by the 1931 act of section 18-113, Comp. 1929, granting express authority to borrow money in anticipation of dues for the legitimate purposes of the corporation. The new act is not in purported amendment of the old, though it re-enacts many of its provisions. It covers the entire field relating to domestic building and loan associations, except that embraced by sections 123 to 125, Comp. 1929, providing for reports to and examinations by the state bank examiner. We do not feel called upon to determine whether, while in force, its effect was merely declaratory of whatever implied power of borrowing otherwise existed, or whether it was a limitation on such power. In either event the repeal left unimpaired such incidental power of borrowing as associations of this kind otherwise possessed. Therefore, the question should in our view be determined from the provisions of the new act and a consideration of the inherent nature and purpose of such associations, uninfluenced by the repeal of the section mentioned.

Mutual building and loan associations are sui generis in the corporate family.

"Building and loan associations are peculiar corporations. In none other is it admissible that the capital shall be withdrawn at the will of the stockholder. But in these it is expressly provided that any stockholder may withdraw, on giving 30 days' notice thereof, and receive 'the amount paid in and such proportion of the profits as may have accumulated.' The only limitation upon the privilege found in the charter is that but one-half of the funds in the treasury is subject to such demands without the consent of the directors." Circuit Judge Lurton in Wilson v. Parvin (U. S. C. C. A., 6th Cir.) 119 F. 652, 659.

"Building and loan associations have been well characterized as 'corporate partnerships.' Towle v. American B., L. [& Inv.] Society (C. C.) 61 F. 446; Security [S. & L.] Ass'n v. Elbert, 153 Ind. 198, 54 N. E. 753." In re German Savings & Loan Ass'n (U. S. C. C. A., 7th Cir.) 253 F. 722, 723.

An illuminating exposition of the origin, nature, and development of such associations is to be found in Cook v. Equitable Building & Loan Ass'n, 104 Ga. 814, 30 S. E. 911.

It is rather generally held that if there is no statutory restriction against it the association may borrow where it is reasonably necessary to carry on the purposes of the organization. 9 C. J. 953; 4 R. C. L. 365; 4 Am. & Eng. Enc. of Law (2d Ed.) 1022;

Thompson on Building Associations (2d Ed.) § 275 et seq.; Cook v. Equitable Building & Loan Ass'n, 104 Ga. 814, 30 S. E. 911, 917.

In Cook v. Equitable Building & Loan Ass'n, supra, the status of coupon stock purchased at its full face value, $100 per share, bearing interest at rate of 6 per cent. per annum, was involved. The purchaser had the right on 90 days' notice, to receive back the money paid for the stock, and the association a like privilege, upon six months' notice, of refunding to the purchaser the money paid therefor, and taking up the stock. The court, after construing the transaction to be a borrowing, said: "This gives rise to the question as to whether or not a building and loan association can borrow money, it not being, either by its charter or the laws of this state, prohibited from so doing. As a general rule, a private corporation can incur a debt by procuring a loan of money for the purpose of carrying on its legitimate business. We see no reason why these associations are not clothed with a like power and privilege. From the nature of the plan of these associations, it necessarily follows that in the incipiency of their organization, on account of the small and gradual payments made upon their stock, they can have for some time but a small fund upon which to operate. To meet this, or any other emergency in its business, it may be to the interest of all its membership at times to borrow money. Should any abuse of such power arise on the part of the officers of the association, any member thereof would have his remedy in the courts to correct it. There is some respectable authority against this view; but, as stated in 4 Am. & Eng. Enc. Law (2d Ed.) p. 1022: 'The better opinion is that there is nothing to take such associations out of the rule governing corporations generally, and that they have the power to borrow in order to further the ends of their incorporation, even though no such power is conferred by the charter or general law, or recognized in the by-laws.' In Thomp. Bldg. Ass'ns, p. 113, § 4, it is declared: 'The unquestioned weight of authority in America is, to give building associations the incidental right to borrow. The question of the right to borrow is to be determined by inquiring into its objects and purposes. It has conferred upon it those incidental rights that are consistent and reasonably necessary to carry on its business. The vital question is, is borrowing necessary to accomplish its objects? If it is, then, upon principle and authority, it may borrow.' See, also, End. Bldg. Ass'ns (2d Ed.) § 297 et seq. A well-considered case, in which the supreme court of Wisconsin recognizes this right, is North Hudson Mut. Building & Loan Ass'n v. First Nat. Bank of Hudson, 79 Wis. 31, 47 N. W. 300 [11 L. R. A. 845]."

While the foregoing citations from texts and the Georgia case deal more or less generally with the implied power of such associations to borrow, there have been brought to our attention some cases dealing specifically with the power to borrow to pay off matured and withdrawing shareholders. These cases are discussed rather extensively in the briefs of the parties. Those relied upon chiefly by plaintiff are Appeal of Powell, 93 Mo. App.

296, and Standard Savings & Loan Association v. Aldrich (U. S. C. C. A., 6th Cir.) 163 F. 216, 218, 20 L. R. A. (N. S.) 393, and case note. The defendant association finds comfort in the opinions in North Hudson Mutual Bldg. & Loan Ass'n v. First National Bank, 79 Wis. 31, 47 N. W. 300, 303, 11 L. R. A. 845; Bohn v. Boone Bldg. & Loan Ass'n, 135 Iowa, 140, 112 N. W. 199, 124 Am. St. Rep. 263; and Marion Trust Co. v. Crescent Loan & Investment Co., 27 Ind. App. 451, 61 N. E. 688, 87 Am. St. Rep. 257.

The opinion in the Aldrich Case made it clear that the decision was not to be construed as holding either way upon the right of such an association under its implied powers to borrow to pay off maturing shares, for the court said at the outset of its discussion: "The question as to whether, in the absence of statutory authority, such an association has the power to borrow money for the legitimate purposes of the association, such as to pay maturing shares and thereby avoid recalling or assigning profitable investments, has not often arisen and need not be here decided."

The case dealt solely with the power of borrowing to pay off a withdrawing shareholder, that is, the holder of running stock upon which the payments plus earnings had not theretofore been sufficient to fully mature the same. Construing the language of the Michigan statute conferring withdrawal privileges, almost identical in terms with the language of our statute, the court, after quoting the statute, said: "We conclude therefore that no authority existed, express or implied, to borrow money to meet the claims of withdrawing shareholders. Such a borrowing would not be for the purpose of paying debts and liabilities in due course of business."

Appeal of Powell, supra, decided by the Missouri Court of Appeals, fails to disclose whether the money borrowed was to pay off matured or running shares. The decision is plainly based upon a holding that the statute, similar to our own, prohibits the paying off of any shareholder, whether the holder of fully or only partially matured shares except from the proceeds of a specified percentage of monthly cash receipts.

The cases of North Hudson Mutual Bldg. & Loan Ass'n v. First Nat. Bank, supra, by the Supreme Court of Wisconsin, and Bohn v. Boone Bldg. & Loan Ass'n, supra, by the Supreme Court of Iowa, are the leading cases in support of defendant's position. Both, however, were cases of borrowing to pay off fully matured shares. Marion Trust Co. v. Crescent Loan & Investment Co., supra, by the Indiana Court of Appeals, was a case dealing with the lender's right to recover on a note given by an association for money borrowed to pay withdrawing stockholders whose stock had not fully matured. The borrowing association was insolvent at the time of the loan. For the consideration of the case, it was conceded by the court that the association under such circumstances could not legitimately pay out money borrowed on the credit of the association in discharge of withdrawals. Nevertheless, the association was held liable on its note given for money so used upon the theory that the lender was not affected by the

wrongful application of the money loaned. The case is of little value to us here, since it turned upon a point not involved in the present appeal.

In the North Hudson Mutual Bldg. & Loan Ass'n Case, a well reasoned and considered opinion, the power to borrow for meeting maturing shares was implied as being reasonably necessary in order to conveniently carry out the purposes of the corporation. The court said: "In conducting the business of a corporation of the serial order, when a considerable portion of the stockholders are not borrowing members, it might be not only a just but a beneficial way of conducting the business to loan the money received in the usual course of business to the members of the corporation who were willing to borrow the same and pay large premiums therefor, and not keep the same on hand to the detriment of all the members, and accumulate it, in order to be prepared to pay off the series of stockholders not being borrowing members whose stock became of its par value, and when the necessity for payment arrived make a temporary loan to pay off said members. It seems to us that this would not be an unreasonable way of conducting the business of the corporation, and that it could, if it saw fit, make a loan for that purpose, there being no statute or by-law of the company expressly prohibiting the corporation from so doing. We must conclude, therefore, that the corporation had the power to make a loan for the purpose of paying off the stockholders of the first series when their stock became of its par value."

In Bohn v. Boone Bldg. & Loan Ass'n, supra, the Supreme Court of Iowa followed the case just discussed and quoted from and held the association empowered to borrow money to meet matured shares. Indeed, the opinion in the Aldrich Case seems to assume, as indicated by the excerpt therefrom above quoted, that money borrowed to meet maturing shares is for a legitimate purpose, though denying the legitimacy of the purpose where borrowed to pay off shares only partially matured.

Mr. Thompson, in the second edition of his work on Building and Loan Associations, takes the view that the power to borrow to meet withdrawals exists in such associations. At section 116 of his text he states: "One of the objects of the building association being to loan money, it is essential for the best return upon the money that the association keep loaned all its available money; and if there be not sufficient money in the treasury to pay withdrawals or meet the proper obligations of the association, it becomes necessary that the association resort to its borrowing powers. This power is one, however, of limitation, and it has been held that where the by-laws place no limit upon the borrowing power of the association, such by-law is invalid; but the weight of modern authority is that the association may borrow money to accomplish the purpose for which it was created."

We are unable to see any valid material distinction between the association's power to borrow to meet fully matured and partially matured shares. The right of the stockholder to withdraw in either event is based upon

the same statute. The statute itself makes no distinction. If this statute as held in Appeal of Powell, supra, operates an absolute prohibition against meeting withdrawals except from current monthly cash receipts, a holding with which we are unable to agree, the prohibition will apply just as logically and as forcefully to wholly matured shares as to those only partially matured.

Helpful annotations of cases on the rights and status of withdrawing members are to be found in 35 L. R. A. 289, supplemented in 49 L. R. A. (N. S.) 1129. Some consideration of the right of withdrawal will aid in the decision to be reached. Much discussion has been had as to whether the withdrawing member upon expiration of his notice of withdrawal and before payment stands in the relationship to it of a creditor or a shareholder. He frequently is referred to as a "creditor." The term is misleading if applied in its technical sense. We think no better definition of his status is to be found than that given by the Virginia Court of Appeals in Andrews v. Roanoke Bldg. Ass'n & Inv. Co., 98 Va. 445, 36 S. E. 531, 49 L. R. A. 659. It said: "A member of such an association must, upon withdrawal, retain some relation to the company, growing out of his membership, other than that of creditor. It seems to us that by so much as he falls short of being clothed with the rights of a creditor, by so much there must remain in him the residuum of his rights as a member; otherwise, as in the case at bar, he could not sue as a creditor, because there was no fund out of which his debt could be paid, and the company, by its dereliction of duty, would deny all redress if he is not permitted to seek a remedy in his capacity as stockholder. These propositions seem to be supported by authority."

All the authorities agree that the right of withdrawal ceases upon insolvency. When the right ceases, of course, the power of borrowing to satisfy the right falls with it. The observations of the Supreme Court of Pennsylvania in Stone v. Schiller Bldg. & Loan Ass'n, 302 Pa. 544, 153 A. 758, 760, a late case, are so illuminating upon the relative rights and duties of membership in such associations, particularly in view of the economic depression then and now existing, that we quote therefrom at some length. The court said: "The fundamental basis governing the right of withdrawal is that the association must be solvent. Insolvency, actual or potential, is incompatible with the right to withdraw. * * * Solvency in connection with a building and loan association is not a matter of bookkeeping but of sound business judgment. Where an association is insolvent, as that term is generally understood, or where a succession of withdrawals would precipitate insolvency, or have a strong tendency to do so, a judgment should not be entered in an action by a withdrawing member. A judgment under such circumstances would not be effective. See Christian's Appeal, supra [102 Pa. 184]; National Savings, Loan & Bldg. Ass'n, 9 Wkly. Notes Cas. [Pa.] 79. If a shareholder wishes to force further liquidation, it should be through the proper authorities. Where an investment in a building and loan

association turns out to be doubtful, and the directors, by careful and prudent management, can save the venture, or greatly minimize the loss, these officers should be given every opportunity to bring the matter to a successful conclusion. This is a fundamental idea of partnership. The difficulty with associations is not always brought on by mismanagement; more frequently it is a depressed real estate market, particularly in times of great economic depression, such as the present. A shareholder owes a duty to his fellow members of the so-called partnership to not place them, as well as himself, in a position where unnecessary loss must be suffered. He should not embarrass the association by suit and judgment. Such actions accentuate an already distressed real estate market, imperil loans, bring on execution sales, forced liquidation, or a state of insolvency. O'Rourke v. West Penn L. & B. Ass'n, supra, [page] 310, 311 of 93 Pa. To avoid such a disaster, when payment to withdrawing members becomes impossible, a reasonable time should be given to enable the officers to re-establish the company. If this step is unavailing, the state banking department should be called in. They may be relied on to keep the affairs of the concern on an even keel and prevent over-reaching, if any is attempted."

It should be remembered that the borrowing member is by the statute denied the right of withdrawal. "No stockholder shall be entitled to withdraw whose stock is held in pledge." Section 3, c. 147, L. 1931. The plan of such associations requires the pledge of his stock by the borrowing member, and, ordinarily, the membership is largely composed of borrowing as distinguished from nonborrowing members. But the nonborrowing member, we may say the investing member, is given by the statute a conditional privilege öf withdrawal. True, the statute, by limiting the amount in the treasury applicable to withdrawals at a given time except by consent of the board of directors, gives the association a weapon with which to shield itself from excessive simultaneous withdrawals. But this is not to say that a perfectly solvent and going concern may not, by consent of its governing board, employ its credit reasonably in order to give reality to this privilege conferred by the statute, if it exercises the power with due regard to the rights of the remaining shareholders and leaves its solvency unimperiled.

Borrowing under such circumstances would be in order to carry out a legitimate purpose of the corporation and to further an object of its creation. The power should, of course, be judiciously exercised. But to deny it altogether to a solvent and going association, perhaps compelling it to defer and postpone from time to time the meeting of withdrawals in reasonable volume, might very easily precipitate a run of withdrawal applications to the utter financial ruin of an association quite solvent but for the unwarranted fear created among its members. The depositor in a bank whose financial standing has been questioned presents his check at the paying teller's window for his entire balance. To his surprise and gratification it is handed to him in lawful money. He hands it back. If he can get it, he doesn't want it. His confidence is re-

stored. That depositor may be a nonborrowing member of a mutual building and loan association, but he is still the same individual possessed of the same fears, the same human frailties.

The exercise within reasonable limits of the power to borrow for each of the purposes here specified might often be essential to the very life of an association of this kind. Credit is one of the most valued possessions of the ordinary corporation. The power to employ it for legitimate purposes is one of its most important attributes. This power exists in ordinary corporations by implication except as restricted by charter or by-law. We see no reason upon principle or authority to deny it to a corporate association such as defendant within the limits here sought to be exercised.

Accordingly, the judgment of the trial court will stand affirmed except so much thereof as restrains defendant from using any of the proceeds of the proposed loan to meet the demands of withdrawing stockholders. That portion of the decree will be reversed, and the cause remanded, with directions to the trial court to dissolve the injunction. The defendant association will recover its costs below and in this court. It is so ordered.

BICKLEY, C. J., and WATSON and HUDSPETH, JJ., concur.

NEAL, J., did not participate.