PERFEX RADIATOR COMPANY, Appellant, vs. GOETZ and others, Respondents.

*December 8, 1922—January 9, 1923.*

*Assignments for creditors: Preferences: Who may avoid: Corporations: Conveyances of property: Irregularity: Estoppel: Officers and directors: Delegation of powers: Suspension of power during liquidation: Trustees: Powers.*

1. Even though a trust deed assigning the property of a corporation for the benefit of its creditors granted preferences to certain classes of creditors and was not in accordance with the general statutes pertaining to such assignments, an objection on that ground could not be legally made by any one but a creditor.

2. A conveyance for the benefit of creditors containing a preference as to one or more creditors similarly situated may be set aside at the instigation of a creditor, provided he has not participated in the transfer or in the proceeds of the assignment, or has not legally waived his rights as a creditor, or has been guilty of acts which would estop him from taking advantage of the transfer.

3. A transfer by a corporation of its property in violation of sub. 1, sec. 1775, Stats., may under certain circumstances be binding, and the corporation estopped from denying the validity thereof.

4. Where the corporation had received the benefits from a trust deed by having bankruptcy proceedings against it discharged, valuable rights of creditors surrendered, and its affairs administered by the trustee who had incurred obligations thereunder, it was estopped to attack the validity of the deed on the ground that the authority to execute the deed granted at a stockholders' meeting was ineffective because the proper notice of the meeting had not been given.

5. Even if those who executed the trust deed on behalf of the corporation as its officers were not officers *de jure* but were officers *de facto,* the corporation is estopped, under the circumstances in this case, from denying their authority.

6. It is ordinarily illegal for a board of directors of a corporation to delegate the powers vested in them either by statute or by its articles of organization.

7. The execution by the corporation of the trust deed conveying its property to a trustee, to be administered by him in accordance with the directions of a committee of its creditors, is not invalid as an attempted delegation by the directors of their powers, where at the time of its execution all of the property of the corporation was in the hands of a trustee in bankruptcy by whom it was about to be sold, so that the powers of the directors were already suspended, and the execution of the trust deed was merely an attempt to avoid a forced sale and preserve the property for the corporation.

8. The rights, powers, and duties of the trustee were defined by the trust deed, but as a trustee he is always amenable for a violation of his trust to a court of equity.

9. The relationship of the trustee to the corporation was different from that of an ordinary agent who holds at the pleasure of his principal, and fell under the exception to the general rule as to the revocability of an agent's powers which occurs where the power is coupled with an interest, as until the interest created by the trust deed was satisfied the legal title would remain in the trustee.

APPEAL from a judgment of the circuit court for Racine county: JAMES WICKHAM, Judge. *Affirmed.*

The appeal is from a judgment adjudging valid a certain trust deed executed by the plaintiff to the defendant, *Julius J. Goetz,* as trustee, and dismissing plaintiff's complaint, with costs.

The plaintiff, a corporation with an authorized capital stock of $1,000,000, early in the spring of 1919 became

financially embarrassed, due largely to claims by purchasers of stock who contended that the stock was sold to them under fraudulent representations and in violation of the blue sky laws, and who threatened rescission of purchases and to bring actions for the recovery of the amounts paid.

Pursuant to the action of leading creditors plaintiff was declared a bankrupt, and the defendant *Julius J. Goetz* was appointed its trustee in bankruptcy by the United States district court for the Eastern district of Wisconsin, and such trustee thereupon took possession of all the property and assets of the plaintiff and proceeded to administer thereon for the benefit of creditors. While such corporation was so in bankruptcy, one E. W. Lawton, an attorney at law from Racine, Wisconsin, evolved a scheme by which it was designed to release the bankruptcy proceedings and to place the property and assets of the plaintiff in the hands of a trustee under and pursuant to a trust deed, the object and purpose thereof being to provide for the payment of claims of creditors in full, and for the conservation of the balance of the assets not necessary for the payment of claims of creditors, for the corporation and its stockholders. The principal difficulty confronted by the promoters of this scheme was the dissatisfaction of numerous stockholders who made the charges of fraud aforesaid and who threatened, by rescinding their purchases, to become creditors rather than stockholders. To remove this difficulty Lawton formed an association of such dissatisfied purchasers of stock, opened up an office in the city of Racine, which was called the "Office of Holders of Certificates of Stock in the *Perfex Radiator Company*. E. W. Lawton Counselor, A. F. Erickson Secretary;" and in the course of time, greatly through his efforts, not only procured authority to represent such stockholders in the new arrangements to be made but procured written waivers from them, under and pursuant to which these stockholders waived all claims for rescission and agreed to hold their stock provided a release from

bankruptcy could be procured and a general design as outlined carried into execution.

From a period of time shortly before the bankruptcy up to the time of the execution of the trust deed herein referred to, one Frank Schoenfeld, an attorney at law of the city of Chicago, represented the plaintiff, and one Edward L. England, also an attorney from Chicago, represented the petitioning and other creditors, and during the course of the negotiations by said Lawton in behalf of stockholders, in order to make effective and to crystallize the scheme heretofore referred to, he co-operated with said Schoenfeld as such attorney for the plaintiff and said England as such attorney for creditors, and early in the month of June the efforts resulted in a general agreement on the part of these three representatives of parties interested, which had for its main object and purpose, first, the release of the bankrupt estate from the bankruptcy proceedings; second, the transfer of such assets to the defendant *Goetz* as trustee under a trust deed for the benefit primarily of creditors; third, the payment in full of the claims of creditors; and fourth, the conservation as far as possible of the business of the corporation, and, upon the discharge of the claims of creditors and certain other preferred claims, a reassignment of the balance of the assets to the corporation.

The general outline of this plan was also submitted on various occasions to the board of directors of the plaintiff, and was fully discussed not only by said Lawton, Schoenfeld, and England, but also by one Opitz, the president, one Wolf, the secretary, and by directors of the corporation; and it was finally agreed that a meeting of the stockholders of the company be called for the 17th day of June, 1919, to procure a ratification of such plans and a due authorization on the part of the executive officers to carry the same into effect. Such meeting was thereupon held on the 17th day of June, and there were represented at such meeting, in person and by proxy, 34,477 shares of stock in the cor-

poration out of a total number of 49,643 shares of the stock then outstanding.

It appears quite clearly from the evidence that Opitz, the president, and Wolf, the secretary, acted in their official capacities at such meeting without any challenge on the part of any of the stockholders as to their right or authority so to do, and that in such meeting Lawton participated and offered for the approval of the stockholders so represented three resolutions, one approving the compromise and settlement with creditors and authorizing and directing the execution on the part of the plaintiff, by Opitz as president and Wolf as secretary, of the trust deed in question; one providing for an issue of preferred stock in the sum of $60,000, the proceeds whereof were to be used by the trustee in the payment of the claims of creditors; and a third resolution approving of the acts of *Goetz* as trustee while acting in that capacity in the bankruptcy proceedings. These resolutions were unanimously adopted. The composition agreement for creditors provided for a payment to creditors of twenty-three per cent. of their claims in cash, twelve per cent. in sixty days, twenty-two per cent, in four months, twenty-two per cent. in seven months, and twenty-one per cent. in ten months.

On the following day numerous directors and stockholders of the corporation appeared before said federal court, and there were present also said Schoenfeld, acting in behalf of the corporation, said England, acting in behalf of creditors, and said Lawton, acting in behalf of stockholders. Representations were thereupon made to the court outlining in a general way the progress made to carry out the composition agreement and the terms of the trust deed, and in the discussion that took place in the presence of the court Mr. Schoenfeld and Mr. Lawton participated. An order was thereupon made by the court releasing and discharging the bankruptcy proceedings upon condition that the representations made be complied with and upon the

approval and acceptance of the trustee's report; and thereupon the trust deed was duly executed by said corporation, said Opitz signing as president and said Wolf as secretary and said *Goetz* as trustee, in the presence of said Lawton, who, at the request of the attorney for the defendant *Goetz,* signed as an attesting witness.

It also appears that before the final report of the trustee was submitted to the referee in bankruptcy for approval said Lawton and his attorney, Edward M. Smart, were furnished with a copy of the trust deed, and that the parties interested thereupon proceeded to the office of said referee, who approved of the final report of the trustee, whereupon the bankruptcy proceedings were fully released and discharged, the trust deed delivered to said *Goetz* as trustee, and the assets of the corporation transferred to and accepted by said *Goetz* under and pursuant to the provisions of said trust deed.

While one of the conditions under which said trust deed was executed consisted of the raising of a fund of at least $60,000 to be derived from the sale of the preferred stock of the corporation, and while said England, acting in behalf of the petitioning and other creditors, consented to the general plan outlined by the resolutions aforesaid, and while said sum of $60,000 was actually raised and placed in bank by Lawton, nevertheless the said Lawton, in violation of said agreement, refused to turn over said sum of $60,000 to the trustee, and was instrumental subsequently in causing the amount to be repaid to the stockholders contributing the same.

It was contended on the trial that just prior to the meeting of the stockholders on June 17th, at a meeting of the board of directors, the old directors of the company resigned and that they elected a new board of directors, who now claim to be the duly elected and authorized board. On the other hand, it was contended by the defendants herein and by the old board that the old directors did not actually

resign, but that they merely discussed the names of the proposed new members of the board of directors, and that in any event the resignation of the old board and of the officers of the corporation would not become effective until after the due carrying into effect and execution of the proposed deed. However, on the 19th day of July the alleged new board met and elected or pretended to elect said Lawton as president of the corporation, and has up to the present time contended that the new board constituted the board of directors.

Immediately after assuming his trust the trustee proceeded to make the initial cash payment of twenty-three per cent. to the creditors, and he also mailed to them notes signed by the corporation, by Opitz as president and Wolf as secretary, evidencing the balance of the claims of creditors, which under the terms thereof became due in accordance with the composition agreement.

On the 26th day of July, 1919, at a meeting of the new board of directors, a resolution was passed repudiating the trust deed and requesting the proper officers to make demand upon the trustee for the return of the assets and the property of the corporation, and on the 1st day of August a written notice and demand to that effect was served upon the trustee, which notice and demand the trustee refused to comply with; and on the 15th day of August the action herein, which involved a demand on the part of the plaintiff for the setting aside and annulment of said trust deed and the return of the property held by the trustee in trust, was begun.

Additional essential facts are referred to in the opinion.

For the appellant there was a brief by *Thompson, Myers & Kearney,* attorneys, and *William D. Thompson,* of counsel, all of Racine, and oral argument by *William D. Thompson.*

For the respondent *Goetz* there was a brief by *Simmons, Walker & Wratten* of Racine, attorneys, and *Charles E.*

*Wild* of Milwaukee, of counsel, and oral argument by *Mr. John B. Simmons* and *Mr. Wild*.

DOERFLER, J. It is contended by plaintiff's counsel that the execution of the trust deed in question was not duly authorized by the board of directors or by the stockholders, and that the corporation could not legally execute the trust deed in question; and that in any event, being preferential as to certain creditors, it was void. In its findings of fact the court found:

"1. That the trust deed described in the plaintiff's complaint was on the 18th day of June, 1919, duly executed on behalf of the plaintiff corporation by F. M. Opitz as president of the plaintiff corporation, and by J. P. Wolf as secretary thereof, and sealed with the corporate seal of said corporation, and was also duly executed by the defendant *Julius J. Goetz,* and was duly delivered to said *Julius J. Goetz* as trustee, which said execution and delivery on the part of said corporation, by said officers, were duly authorized by the majority of its directors and by the majority of its stockholders at a special meeting of the stockholders of said corporation duly called and held on the 17th day of June, 1919.
"2. That since the time of the execution and delivery of said trust deed said *Julius J. Goetz* as such trustee has had the charge and management of the property described in said trust deed in the manner provided by the terms thereof, during which time he has paid to its creditors from the proceeds of the property in his hands the first three instalments to be paid them by the terms of said trust deed, and a portion of the remaining instalments, including the payment in full of several creditors having claims for small amounts, and has contracted certain other debts in the operation of said business which have not yet been paid."

In effect it was found by the court that the execution of the trust deed was duly authorized.

The trust deed in question was not in the usual and ordinary form. It provided for certain preferences, among

which were the claims of the trustee in bankruptcy for services rendered during the administration of the bankruptcy proceedings, and for the payment of the trustee for his services to be performed under the trust deed, and for the payment of counsel fees of the trustee in bankruptcy, of the trustee appointed by the deed, and of the attorney for the corporation. It also vested the trustee with full power to mortgage or sell any or all of the property held by him in trust, if it should appear to him necessary in order to carry out the provisions of the deed; and the deed also contained a provision under and pursuant to which the trustee agreed to perform his duties under the advice and direction of a creditors' committee. While the trust deed was subject to attack by creditors as being preferential and not in accordance with the general statutes pertaining to assignments for the benefit of creditors, such an objection could not be legally made by any one but a creditor, and the transfer was a valid transfer and was vulnerable only pursuant to an attack of creditors. In *Geisse v. Beall,* 3 Wis. 367, it was held that a voluntary assignment for the benefit of creditors is void, if void at all, as against creditors only. *Gross v. Gross,* 94 Wis. 14, 22, 68 N. W. 469.

The transfer was one primarily designed for the benefit of creditors, and any preference provided for therein to one or more creditors over others similarly situated would unquestionably have avoided the transfer at the instigation of a creditor, provided he had not participated in the transfer or in the proceeds of the assignment, or had not legally waived his rights as a creditor, or had been guilty of acts which would have estopped him from taking advantage of the transfer. No creditor, however, has appeared or objected to the trust deed, but on the contrary it appears that they have voluntarily not only accepted the dividends paid them by the trustee, but have expressly by an instrument in writing waived all rights which they might

otherwise have had in the premises. The contentions herein
are not made by creditors but by the plaintiff corporation,
which has been not only instrumental in participating in the
creation and execution of the deed, but has held out special
inducements to the creditors under and pursuant to which
they consented to the release of the bankruptcy proceedings
and to the transfer of the property to the trustee and to a
distribution in part of the corporate assets.

The plaintiff corporation at the time of the execution of
the deed was not a going concern. It was insolvent. It
incurred obligations to creditors and others which it was
unable to meet, and pursuant to the action of the petition-
ing creditors was forced into involuntary bankruptcy. All
of its property and assets at the time of the execution of the
deed were in the hands of the trustee in bankruptcy, to be
administered upon in the course of the bankruptcy pro-
ceedings in the federal court. The time for liquidation of
the assets had practically arrived, and it was only by the
efforts of those representing the various interests involved
that the release of the property was obtained from the bank-
ruptcy court and the property saved from a forced sale.
Furthermore, the trustee in bankruptcy held the property
primarily for the benefit of creditors. No individual stock-
holder appeared before the court and made complaint with
reference to the proceedings had. The very proceedings
which finally culminated in the release of the bankruptcy
proceedings and the execution of the trust deed were insti-
gated and participated in not only by the representative of
the creditors but also by the representative of numerous
stockholders and by the duly authorized counsel of the
corporation. There is no evidence in the case which im-
pugns the good faith of the corporation's counsel. Lawton,
an attorney at law, who now claims to be the president of
the plaintiff corporation, and who, at least during a portion
of the proceedings, was represented by able counsel, now

contends that the deed in question was not authorized and is not a valid and binding instrument.

Whether the provisions of the by-laws of the corporation with respect to a five days' notice to stockholders for the calling of a special meeting were complied with or not (and plaintiff contends that they were not), it appears clearly from the evidence that upwards of two thirds of the capital stock then outstanding was represented at the meeting in person or by proxy, and that all of such stock so represented was voted in favor of the adoption of the resolutions.

The trust deed itself was drawn by the counsel for the corporation. It is not contended that all of the stockholders did not receive notice of the meeting, but that the full five days' notice was not given. If this be true, the corporation or the stockholders might have frustrated the entire plan if they had appeared timely and exercised their rights. However, nothing was done towards challenging the validity of the trust deed until after the expiration of six weeks after the deed had been executed and the property transferred to the trustee and the creditors had consented to the new arrangement which resulted in a waiver of all rights, to an immediate liquidation in the bankruptcy proceedings, and the distribution of the assets among the creditors, and after a large share of the assets had been distributed by the defendant *Goetz*, as trustee, to the creditors.

Under these circumstances the question naturally arises whether the corporation is in a position to take any advantage of such alleged irregularities. Under the provisions of sub. 1, sec. 1775, Stats., a corporation may, "by a vote of the majority of the stock given at any regular meeting or at any special meeting duly called for the purpose, sell or convey or authorize to be conveyed all or any portion of the property owned by it, whether real, personal or mixed."

It will be noted that the statute referred to does not contain a provision which makes a transfer on the part of a corporation of its property void for failure to comply with this provision, nor does it provide for a penalty for a failure to comply therewith, so that in any event the transfer made is one which under certain conditions may be deemed voidable. It has been repeatedly held that a transfer by a corporation in violation of the provisions of the statute may under certain circumstances be binding and the corporation estopped from denying the validity thereof.

In *Witter v. Grand Rapids F. M. Co.* 78 Wis. 543, 546, 47 N. W. 729, it was held:

"That a corporation cannot repudiate its contract when it has received the benefit thereof, when such contract is not expressly prohibited by law, is well settled by the authorities, and it is equally well settled that when the stockholders assent to such contract and the avails of the contract are used for their benefit, they cannot avoid such contract. This has been so often held by the courts that it is almost unnecessary to cite authorities to sustain the proposition." See, also, *North Hudson M. B. & L. Asso. v. First Nat. Bank,* 79 Wis. 31, 47 N. W. 300, and *Eastman v. Parkinson,* 133 Wis. 375, 113 N. W. 649.

In *Eastman v. Parkinson, supra,* in the opinion by the court rendered by the late Mr. Justice MARSHALL, it is said:

"In case of a statute or organic act of incorporation regulating the manner of giving corporate mortgages, which does not prohibit the making thereof without complying therewith, and expressly or by necessary implication declare one made in violation thereof void and a mortgage being given without such compliance, the mortgagee acting in good faith and the corporation receiving and enjoying and retaining the benefit of the same, neither it nor its creditors nor stockholders, nor any one representing them or any of them, in the absence of some statutory authorization, can successfully impeach the transaction. A mere statutory regulation as to consent of the stockholders of a corpora-

tion, as a condition of its mortgaging its property, is solely for the benefit of the stockholders. . . . This court and most courts hold that an *ultra vires* contract, one not within the scope of the corporate authority to make under any circumstances, which is no longer executory and is not tainted by fraud or clearly prohibited by statute, or condemned by sound public policy, cannot be impeached by the corporation or any one representing it; that the only remedy is one on behalf of the state to punish the corporation for violating the law."

The trust deed in question has been executed in good faith; at least there is no evidence which would authorize a conclusion to the contrary. The property has been fully transferred and valuable rights of creditors have been surrendered. The contract is no longer executory, and the rights of an innocent third party, namely, the trustee under the trust deed, have attached, and the trustee, under the powers duly granted to him, has acted in good faith, has incurred obligations, and has distributed a large portion of the assets. The deed itself is not in violation of an express statute, nor is it contrary to any express public policy, and the deed, even if *ultra vires,* can be attacked only by the state. Therefore it would appear clearly that the corporation is estopped from asserting any rights whatsoever on account of the execution of said deed.

But plaintiff's counsel further contend that Opitz at the time of the execution of the deed was no longer the president of the corporation and that Wolf was not its secretary, and that for that reason the trust deed is void. We have carefully examined the evidence on this point and are of the opinion that when the trust deed was executed both Opitz and Wolf were *de jure* officers of the corporation; but whether they were *de jure* officers or not, in any event they were *de facto* officers, and the deed was executed under such circumstances as to estop the corporation from deny-ing their authority.    3 Fletcher, Corp. §§ 1846, 1838;

*Barthell v. Hencke,* 99 Wis. 660, 662, 75 N. W. 952; 14A
Corp. Jur. 78.

The most serious objection to the trust deed in question
involves the contention made by plaintiff's counsel that in
the execution of this instrument the property and business
of the corporation have passed beyond the control of the
board of directors into the hands of a trustee acting under
the advice and direction of a committee of three represent-
ing the creditors, and that the assumption of the power and
control and disposition on the part of such trustee and com-
mittee amounts to an illegal delegation of the power of
the board of directors.   That it is ordinarily illegal for a
board of directors to delegate the powers vested in them
either by statute or the articles of organization is too plain
for argument, and such delegation ordinarily is as illegal
as is the delegation of power of a legislative body unless
expressly authorized by law.

In *Ames v. Goldfield M. M. Co.* 227 Fed. 292, it was
held (see syllabus) :

"The stockholders of a corporation have a right to expect
from their directors a conscientious consideration of every
proposition which is presented, and which involves any
interest of the company, . . . and the directors have no
power to act as such individually nor can they delegate the
powers vested in them to act for the corporation to any
officers or men, even though they are the majority stock-
holders."

This rule is fundamental and elementary; however, it is
not applicable to a situation such as is presented in the
instant case.   At the time of the execution of the trust
deed the corporation, while still in existence, had no prop-
erty whatever in its possession or under its control, and the
officers and directors continued to function only in a nom-
inal capacity.   The corporate rights, including the rights of
stockholders as to the assets, were merged in the bankruptcy
proceedings, designed primarily for the benefit of creditors,

and the control and disposition of the corporate assets by operation of law had become vested in the trustee in bankruptcy, subject to control and direction by the federal court. The legal title to the property vested in the trustee, and all that remained in the corporation was a reversionary interest after the claims of creditors and the administration expenses had been fully satisfied. At any time prior to the bankruptcy proceedings the corporation could have sold and disposed of all of its property while acting in good faith, subject only to the rights of creditors. It could have also incumbered all of its property by trust deed or mortgage upon such terms as it might deem meet, provided it acted in good faith, subject only to the rights of creditors. It would appear, therefore, logically sound that it could execute a trust deed such as is involved in the instant case, particularly under the peculiar facts and circumstances existing at the time when the trust deed went into effect. The corporation, however, in the instant case was not a going concern. It was insolvent, in the hands of the trustee in bankruptcy, and was about to be liquidated by sale when the general plan designed to salvage a part of the business and assets for the benefit of all concerned was brought into being. Such general plan is one not infrequently resorted to in an attempt to salvage a bankrupt estate, and is one which is quite generally recognized by the courts and the profession as practicable and feasible, and in fact was so recognized by the federal court having jurisdiction of the bankruptcy proceedings. By the execution of the trust deed the general aims and purposes of the bankruptcy proceedings were continued, but under more favorable and advantageous circumstances, particularly to the corporation. True, the assets were removed from the jurisdiction of the bankruptcy court and placed in the hands of a private trustee, but that did not signify, however, that the trustee thereby became an autocrat with full power to act in the premises in such manner as he would be author-

ized to do if he were the individual owner. of the property. His rights, powers, and duties were fully defined by the trust deed in question. He became merely a trustee, and as such is always amenable for a violation of his trust to a court of equity. By virtue of the trust deed the trustee became an agent first for the benefit of creditors. In fact, the creditors in one sense became the owners of the property, subject to the payment of their claims. The relationship of the trustee to the corporation in the instant case is different from that of an ordinary agent who holds at the pleasure of the principal, for such agent is at all times subject to recall at the pleasure of the principal. The only exception to the general rule is when the power of attorney held by the agent is coupled with an interest in the property, founded upon a valid consideration. *Flagstaff S. M. Co. v. Patrick,* 2 Utah, 304. Until such interest created by the trust deed is satisfied the legal title remains in the trustee. Such is the situation in the case at bar. While the assets of the corporation, pursuant to the order of the federal court, were returned to the corporation, and while the trustee holds title to the property under and through the corporation, nevertheless such title was transferred upon the express condition that it be held by the trustee under the trust deed, in conformity with the terms and conditions of such deed. So that the proceedings which resulted in the trust deed in substance merely amounted to a substitution of the private trusteeship for the trusteeship in bankruptcy. The powers and duties, therefore, of the directors of the corporation with respect to its assets were suspended pending the satisfaction of the claims of creditors, and the only right of the corporation and its stockholders, officers, and directors consisted in the execution of the trust deed according to the terms and conditions thereof, and to the fulfilment of the obligations of the trustee on his part of such duties in good faith.

This case in all its aspects presents a situation where the

doctrine of estoppel is peculiarly applicable, and to hold otherwise would result in injustice and fraud; would permit the corporation to obtain property which had been surrendered to a trustee under a trust deed upon conditions expressly designed and created by the corporation itself, and that notwithstanding that innocent parties, the creditors, had acted upon the representations of the corporation and had surrendered valuable rights.

The relief prayed for in the complaint, under the facts and circumstances in this case, cannot be granted by a court of equity. The judgment of the circuit court must therefore be affirmed.

*By the Court.*—Judgment affirmed.